King, J.
This action was brought in the court of common pleas, and- after trial and judgment, was appealed to this court And has been heard by us. The action was brought by the Ohio Oil Company to enjoin Peters as the owner of certain lands, and the other defendants who claim an interest in the premises by the way of a lease, from interfering with the plaintiff in operating the premises described for oil and gas under a lease previously executed in it, by Peters and the defendants other than Peters claiming the same right.
The action was commenced on June 16th, 1897, and the lease to plaintiff under which it claimed in this action, was executed on the 1.1th day of April, 1889, the lease providing that in consideration of $160.00, in hand paid, the receipt whereof was acknowledged by A. Peters and his wife, the owners, he,or the first party therein named, did thereby grant unto Wm. Fleming, of Oil City, Pa., second party, his heirs and assigns, all the oil and gas in and under the *145 following described premises, together with the right to enter thereon at all times for the purpose of drilling and operating for oil, gas or water. And then followed the usual form, excepting and reserving, however, to first party, the one-eighth part of all the oil produced and saved from said premises, to be delivered in the pipe line with which second party may connect his well, the land in question being 63 and ro-0 acres, more or less, situated in this county.
Then there is a prevision relating to gas wells, which is not in contention, and then follows'this: “Incase no well is completed within one year from the date, then this grant shall become null and void, unless second party shall pay to said first party, $160.00 in advance, for each year such completion it delayed.” Then follows a clause relating to the right of second party to the use of gas, oil or water, to run its machinery for operating said wells, and the right to remove its property; a provision that the location of wells should be mutual, and that all conditions of the agreement between the parties should extend to the heirs, executors and assigns; and then follows the execution by the parties. The lease in question, then, granted all of the oil and gasto be found under these premises to the party of the second part, with a provision that in case no well shall be completed within a year, the grant should become null and void, unless the second party should pay the first party $160.00 a year in advance, for each year the completion was delayed. No other provisions of forfeiture are contained in the lease. The lease itself, recited $160.00 for the right to enter at any time during the year from the execution of the contract so paid and accepted by the first party. I will say here, that the defendants, other than Peters, claimed an interest in these premises by virtue of a lease of a similar kind, to which they and Peters are parties, executed on the 13th day of January, 1897,three days before the commencement of this action by the Ohio Oil Company. No claim is' *146 made in the case by any of the defendants, that anything occurred between the 13th and 16th of January,which would authorize Mr. Peters, or any of.the defendants, from insisting upon the forfeiture of this lease, and therefore the de. fendants, other than Peters, have no interest to assert here under the ground of forfeiture,and.cannot assert any ground of forfeiture existing prior to the 13th day of January, 1897. That has been held by this court in the case of Ohio Oil Company v. Wichman; it is also held in other decisions, so that the rights of other parties must be determined as between the Ohio Oil Company and Mr. Peters alone, who was the owner of the property and in possession of all that he had not granted from the time of the execution of this lease, up to the 13th of January, 1893. And now it is insisted by Mr. Peters, who has filed an answer herein, that this lease was forfeited, and it is claimed upon the hearing of the case, that it was forfeited by reason of the fact that the plaintiff delayed his operation under the lease. The facts with reference to the delay, are these: The lease was executed, as I have stated, April 11th, 1889. The first well was completed December 4th, 1894, nearly five years there-, after. The second well was completed July 8th,1896, nineteen months after the first well. The third well was completed February 16th,1897,or after this action was commenced; but' the proof in the case indicates that the third well was commenced by plaintiff about a week before he filed this', petition against Peters and other defendants,and that it was: commenced before the making of the lease from Peters to the other defendants. The lease, we have seen,provided as ground of forfeiture, 'that if the defendants should fail to-complete one well within one year from the date of the contract, it should be null and void, unless they should pay $160.00 in advance for each year the delay was continued. They paid, as I have said,$160 at the execution of the lease, and "they paid thereafter, $160.00 for each and every year *147 there was a delay, up to and including the 11th day of April, 1895, about four months after the first well was put down. They had paid undoubtedly $160 at the beginning of that year, and it covered the year ending April 11th, 1895; and the money had been received and accepted by Mr. Peters, and no complaint was made up to or prior to December, 1894, when the first well was completed, of delay. It is alleged in his answer, that in 1891, about two years after the execution of this lease,and three years before the putting down of the first weU, the plaintiff and others having leases and interests in surrounding property, were proceeding to develop it and to extract the oil from the ground,and which, of necessity,extracted some of the oil from the premises; but as I have said,he,after and during that time and until April 11th, 1895, accepted the payment of the rental which the contract provides should be paid at the option of the second party,to-wit,the plaintiff, for delay in the operation of these premises under the lease. The delay up to 1894 may have been unreasonable, and if Mr. Peters had undertaken to avail himself of that delay and to insist upon sinking oil wells or abandoning the premises--if they had not obeyed his notice and put down wells, it is quite likely he might have established a forfeiture of the rights of the lessees under this contract; but that he did not do; he made no complaint of it. There is no evidence to indicate that he complained at the time, but he did receive the money that the contract provides should be paid, as the consideration for the right of the plaintiff to delay operations under the lease. This lease has no limitations in it in.regard to time; it is different from most leases in that respect. It simply provides that the owner of the property has granted and leased all the oil and gas under the premises, and that the consideration for it is, that the defendants shall proceed to operate;and under the construction that is given to that clause in the lease by the court, it might proceed *148 with reasonable diligence to operate the lease, or, in case it did not see fit to operate, should pay in advance, $160.00 a year,and that part of the contract was fulfilled by the Oil Oo., up to April, 1895, and its payments W3re accepted by Peters for this delay. Now, the well completed December 7th, 1894, did not prove to be a paying well. Indications of oil were present, but the amount of oil secured from the well was very small. The proof shows it was registered in the pipé line about ninety-six barrels in a year and a half,and within the observation of everybody who knows anything about this business, that would not bé a profitable oil well, nor was there any pretense of operating it as an oil well for a good part of the eighteen months, nor was there any payment of additional $160.00 a year after April 11th, 1895, and between 1895 and 1896 there elapsed nearly a year and a half after the rental had been paid, and more than a year and a half after the first well had been put down which had proved to be an unprofitable well, and a reasonable time, it is certain, had elapsed in which to sink another well. It is likely that Mr. Peters had the right long before July, 1896, to insist upon the fulfillment of this contract in the development of this property in securing the product of oil from underneath the premises; but Mr.Peters did not do that,nor did be insist upon the payment of the rent. In Feburary, 1895, a month or so after this first well had been put down and proved to be a failure, he did speak to the agent of the Oil Co. and say to him he wanted him to put down more wells. Something was said,I thinK, about this well not having proven successful,and he wanted another well put down,and the agent of the Oil Company told him he would do it shortly; but he did not, and therefore the parties remained in the same situation,and nothing further was said about it. Now, as I have said, Peters in that time might have insisted upon the development of this property, and upon the failure to do that, insisted upon the forfeiture of this lease, treated it as *149 a forfeiture, leased it to other parties, brought an action t® eject defendants, or availed himself of any legal remedy to end this lease: but Mr. Peters failed to do that. In June, 1896, the Oil Company put up a derrick, and Mr. Peters was present nearly every day while they were doing that and proceeded to drill an oil well, and he was there every day until completed, and that well was profitable, the well producing somewhere in the neighborhood of twenty to thirty barrels of oil, and has continued in operation, ever since that time. That gave to the Ohio Oil Co. an interest in this property under their lease, and the right to insist at least upon the right which they had acquired under the contract of taking oil from the well as long as it should produce oil. Mr, Peters, after that well had gone into operation and the oil had passed through into the pipe lines, received the proceeds of the one-eighth of the oil he contracted to receive by virtue of this lease, and he received that up to the time of the commencement of this action, and ever since.
On August 3rd, as he fixes the date, he saw Mr. Gordon, or the general agent of the Oil Co. in charge of its business, and requested him to sink more wells, and Mr. Gorden told him he would. That is the only conversation that occurred between the parties up to the time they commenced to sink well, No. 3. Well No. 3 they commenced to sink in January, 1897, along about the 9th or 10th. Then, on the 13th, Mr. Peters, withoutt any further communications with the Oil Company or its agents, made the lease to the defendants that I have spoken of. Now, it is clear, up to July, 1896, Mr. Peters had waived his right to insist upon a forfeiture of this first lease, for the reason that the premises had not been further developed. In his answer, he denies plaintiff has kept and performed the conditions of the lease on his part to be kept and performed, and he denies thiat plaintiff entered upon said lands in said lease, in said petition described, and drilled in a large number of wells there- *150 o.ii at great expense, and that each of said wells so being Operated Jay plaintiff, is producing oil,but further defendant,Byers that plaintiff has.-drilled.and.a part of the time operated,bub one well, in the extreme north-west corner of said property, and no more thereon, and that plaintiff has given, andtjbat defendant,-A. Peters, has received the one-eighth part of the oil therefrom,
•^•Ihis distinct allegation in his answer is, that he conceded that in 1894, one well was put down,from which he received one;-eighth part of the oil produced therefrom. It is true, that it is not'much, and it is also true I might say at this point, that it may not have been a satisfaction, under this Contract, . He might have been authorized to have treated this contract as forfeited,if no well has been put down within a reasonable time — -may have treated this well as not being a well,and insisted upon the payment of the consideration in the contract, $160.00, and brought action'for it, or action at least for damages, for failure to complete that provision of the contract that they would pay the $160.00. ,- He might have done any'one of these things, but did not flo>either dr any of them; he waited until 1896, and saw anT bther well put down, at an expense of anwyhere from $1,200.00-to-$2,000.00, and received oil from it ever since, Now then, did anything occur after July,1896, to authorize Mr. .Peters to. insist upon a forfeiture of this contract? We -have held in one or two cases, arising on oil leases, that after the lessee had entered upon the performance of his contract; and had expended money in Ihe development of the lease, as in this ca'se, having put down two wells, one of them being ¡in-full operation, that before his rights under the contract iwhich had then attached and which in this case consisted of i_a- title to all-the oil and gas there was under these premises, ieonld be forfeited,or he be deprived thereof, it was due him in .good conscience, that the party insisting upon the forfeiture should- give notice of it; give notice not of the forfeiture, *151 but of his intention to forfeit in case there be not a reason-, able operation under the lease. :
It seems to us, that this is a.fair and sound rule .to insist upon. The lessee, after he had entered upon the premises and after he has expended money in this case, has a right to know; if the lessor is going to insist upon greater developments of the property than has already been going on for some years, and he shall have notice of the. fact and be given an oppor-tunity to more fully and more speedily develop the property, As I have said, the only intimation from Mr. Peters, is a .conversation that he testifies to,that he called upon Mr; Gordon,and said he wanted him to sink more wells, and Gordon replied that he would do so shortly or soon, or something to that effect. No definite time was named, no intimation was given by Peters to Gordon that if he failed or refused to go on and develop this contract,that he should insist upon a forfeiture; nothing was said to him about that, and no further conversation took place between the parties. Mr, Peters saw fit in January, 1897, to make a lease to another party without saving anything to the Oil Company.
Now he insists in his defense to this action for injunction, that this lease was forfeited at all these various times by reason of delay. Unless it is held that a reasonable time after notice, between July, 1896, and January, 1897, had elapsed, then Mr. Peters defense is not a good one to this action, in our judgment and in view of the fact that nothing occurred between these parties except the conversation above related, we are compelled to hold that Mr, Peters has not made defense to this application for injunction. He has treated the operation of these premises all the time, so far as anything he has done is concerned, as if it was .satisfactory to him. No complaint has emanated.from him except the single request in August, 1896, that more wells should be drilled upon the property.
Another ground is insisted upon, and that is, that the *152 lease should be forfeited because of their having violated the implied covenants of this contract, which are, that they should not only reasonably develop, but should sink offsetting wells. Very little need be said upon that subject, since there was upon the adjoining property, either controlled by plaintiff or others, but four wells that require off-setting. There is one well that is about 400 feet from the premises to the north, and there are four well about 1,000 feet from the premises to the east, some of them in operation and some that have been dry for two or three years. There are four wells then, about 200 feet from Peters’ •lands; three of these are on the piece next.adjoining the north-east corner, and are, as I say, 200 feet from his line, but the wells sunk by the plaintiff in the north-west corner of Peters’ farm, are likewise 200 feet from the line, both north and west,so that if that well was down where it ought to be, it protects his land from drainage from any of these three wells,because it is just 400 feet away from two of them, and a little more than that from the center cne at the northwest corner. But in July,as I have said, with his consent and approval, the company put down another well on the west line of the property, or 200 feet from it, and that off-sets the only other well there is near the line adjoining Mr. Peters’ property,so that all the wells on the adjoining lands that are adjacent to them, have been off-set by these two wells. Now, a great many authorities have been cited in this case to show that there is a ground here for declaring this lease forfeited, but none of them in our judgment,reaches the facts of this case where there has been a distinct, plain line of conduct, pursued by both parties with reference to the construction that should be given to this contract — a line of conduct that the court cannot ignore, on the part of Mr. Peters and the Ohio Oil Company, amounting to a consent to all this delay, or waiver of the right to ask a forfeiture. It seems like a long delay that has expired since 1889, *153 but it has been consented to by Peters, and treated as though a proper thing, and he received and accepted $160.00 a year, as a full satisfaction for that, as long as it was paid, so that no ground exists upon the facts for application of any of the law that has been here cited. Many of the cases cited from Pennsylvania that have been read to us, have no application to an action like this, most of them being actions for damages for ejectment, or for the specific performance of contracts in which different rules of law are applicable, I shall not have time to refer to these authorities, but will content myself by saying, that we hold upon the facts in the case, that the plaintiffs are entitled to the injunction as prayed for.
Bartlett & Wilson, for Plaintiff,
Beard & Beard, (of Toledo); W, W. Campbell, (of Gibsonburg);and Carver & Carver, for Defendant.