SAUDER, ADMINISTRATRIX, ET AL. *v.* MID-CONTINENT PETROLEUM CORP.

No. 660. Argued April 3, 1934.—Decided April 30, 1934.

*Mr. Harry W. Colmery,* with whom *Mr. Ray S. Pierson* was on the brief, for petitioners.

*Mr. Richard H. Wills,* with whom *Mr. James C. Denton* was on the brief, for respondent.

274

Mr. Justice Roberts delivered the opinion of the Court.

Philip Sauder, as owner of the E½ of Sec. 16, Twp. 23, Range 13, Greenwood County, Kansas, and the SE¼ of the SW¼ of the same section, amounting in all to 360 acres, brought suit in a Kansas state court for the cancellation of an oil and gas lease. The cause was removed to the federal district court, where, after Sauder's death, it was revived in the right of his administratrix and heirs. The lease was made June 6, 1916; by sundry assignments the Petroleum Corporation had become the tenant. The recited consideration was $1.00 and the covenants and agreements on the part of the lessee. The term was ten years, and as long thereafter as oil and gas could be procured in paying quantities. The lessee was to deliver to the lessor one-eighth of the oil realized, and if gas should be found, $100 per year was to be paid for each gas well so long as its product was sold or marketed. If no well were commenced within one year all rights and obligations of the parties were to cease upon notice from the lessor to that effect, provided that the lessee should have the right to continue the lease in force from year to year until a well should be drilled, by paying an annual rental of $1.00 per acre. The instrument provided that the lessee might enter upon the premises for the purposes of the lease, use water from any creek or pond, or drill for water, to run machinery for prospecting and for operating the wells, should have the exclusive right to erect, lay and maintain pipe, machinery and structures necessary for producing, storing or transporting oil or gas. The contract ran in favor of and against the heirs, assigns, successors and personal representatives of the parties.

To offset two wells drilled on adjoining property, the lessee completed one well in November, 1921, and a second in January, 1922; but no other wells have been sunk,

nor have any locations for wells been made. On the date of the expiration of the fixed term Sauder wrote the respondent stating that the lease had expired, and adding that he understood if it was a profitable contract respondent was supposed to operate, and if not, he understood the term had run out, and the respondent should release all the tract except the portion on which the wells were being operated. He asked what action the respondent proposed to take. The reply was that respondent considered it had a paying lease and would not surrender it.

The suit was instituted June 27, 1930. In addition to reciting the facts above outlined, the complaint asserted there had been development and production of oil on adjacent tracts, with consequent drainage of oil from the leased land; the respondent was bound to explore and develop the land and had neglected so to do; unless the lease were cancelled the respondent would continue to hold it for speculative purposes, and the plaintiffs be deprived of the objects and considerations for which the lease was made. The answer denied that the lease was being held for speculative purposes, denied the operations on surrounding tracts were causing drainage, alleged the drilling of the two wells was a fulfilment of the obligation to offset wells likely to drain from the demised premises, and denied any breach of the lease.

Upon the trial the petitioners offered in evidence a map showing the number of wells drilled on adjacent premises, the date when they came into production, and the amount of production from each, as well as the location of all which proved to be dry holes. The respondent offered expert testimony showing that in the vicinity there were two sands, the upper of which pinched out eastward of the demised premises, and that the wells on the latter and those on lands to the west and south thereof were in the lower sand, known as the Mississippi lime. These

witnesses testified that in their judgment the geological formation, and the experience with wells drilled on nearby lands, made it so unlikely that oil would be obtained as to justify a prudent operator in abstaining from drilling additional wells on the Sauder tract.

The district judge found that the two wells were drilled as offsets and had been producing oil in small but paying quantities. He summarized the evidence as to drilling on adjacent territory, and found that there was some probability that damage was being done to the leasehold through drainage by wells on adjoining properties. He was unable to decide the question of the likelihood that additional wells on the Sauder tract would produce oil or gas in paying quantities, and held that in the state of the proofs nothing but exploration and positive test by drilling could settle the controversy. After referring to the notice sent by Sauder to the respondent at the termination of the ten year period, he found that no effort had thereafter been made toward exploration or development by drilling wells or otherwise, and that the respondent and its officers had no present intention of further exploring and developing, unless and until developments in the immediate vicinity should convince them that it would pay to take such action. The conclusion was that petitioners had no adequate remedy at law; that respondent and its predecessors in title had not in good faith and with reasonable diligence explored and developed the lands as required by the express and implied covenants of the lease; that it would be inequitable to permit the respondent to hold the property without further exploration and development, as it proposed to do; and that the petitioners were entitled to a decree cancelling the lease, except as to a portion of the SE¼ of the SW¼ of Sec. 16 (upon which the two off-set wells were drilled), as to which the respondent may hold and enjoy its leasehold right so long as it produces gas or oil there-

from in paying quantities. A decree was entered in accordance with the findings, adding the qualification that as to tanks, pipes and equipment located somewhat north of the acreage which the respondent was permitted to retain, these need not be moved until they should become obstacles to the development of the petitioners' land.

Upon appeal, the Circuit Court of Appeals (one judge dissenting) reversed the decree, holding that the respondent had not violated the covenants of its lease, and until it should be guilty of a breach it was entitled to continue to hold the whole tract. The reversal was without prejudice to the bringing of a new suit in the event changed conditions should indicate a breach of respondent's implied covenant to develop. We brought the case here by writ of certiorari.

The question for decision is whether the respondent failed to comply with an implied covenant to develop the tract with reasonable diligence. The petitioners' position is that since the lease was of land in Kansas the case is to be decided according to the rule of law adopted by the Supreme Court of the State, which is said to be more stringent as respects the lessee's obligation than that generally applied by state and federal courts. The majority of the Court of Appeals were of opinion that at the date of the making of the lease the law of the State, as evidenced by the decisions of its Supreme Court, was the same as that followed by the federal courts; and if, by decisions announced subsequent to the effective date of the lease, a broader rule was laid down, the federal courts ought not to apply it with retroactive effect. The petitioners assert that the court was in error in both conclusions.

It is unnecessary to inquire as to the law of Kansas, or the effect to be given it in this case, since we think that the rule followed generally requires a reversal of the decree dismissing the bill.

It is conceded that a covenant on respondent's part to continue the work of exploration, development and production is to be implied from the relation of the parties and the object of the lease; and that this covenant was not abrogated by the expiration of the primary term of ten years.[1] The matter in dispute is the respondent's alleged failure to comply with its obligation. The petitioners say that if the lessee with good reason believes there is no mineral to be obtained by further drilling it should give up the lease; the respondent insists that as there is only a possibility of finding mineral, no prudent operator would presently develop, but the mere possibility entitles it to hold the lease, because it is producing oil from a portion of the area.

We think the respondent's contention cannot be sustained. With respect to a lease quite similar in its provisions it was said in *Brewster* v. *Lanyon Zinc Co.*, 140 Fed. 801, 810, 814:

" The implication necessarily arising from these provisions—the intention which they obviously reflect—is that if, at the end of the five-year period prescribed for original exploration and development, oil and gas, one or both, had been found to exist in the demised premises in paying quantities, the work of exploration, development, and production should proceed with reasonable diligence for the common benefit of the parties, or the premises be surrendered to the lessor.

[1]*Allegheny Oil Co.* v. *Snyder*, 106 Fed. 764; *Brewster* v. *Lanyon Zinc Co.*, 140 Fed. 801; *Acme Oil & Mining Co.* v. *Williams*, 140 Cal. 681; 74 Pac. 296; *Daughetee* v. *Ohio Oil Co.*, 263 Ill. 518; 105 N.E. 308; *Gadbury* v. *Ohio & Indiana Consol. Nat. & Ill. Gas Co.*, 162 Ind. 9; 67 N.E. 259; *Dinsmoor* v. *Combs*, 177 Ky. 740; 198 S.W. 58; *Harris* v. *Ohio Oil Co.*, 57 Oh. St. 118; 48 N.E. 502; *Indiana Oil, Gas & Development Co.* v. *McCrory*, 42 Okla. 136; 140 Pac. 610; *Kleppner* v. *Lemon*, 176 Pa. 502; 35 Atl. 109; *J. M. Guffey Petrol. Co.* v. *Jeff Chaison Townsite Co.*, 48 Tex. Civ. App. 555; 107 S.W. 609; *Hall* v. *South Penn Oil Co.*, 71 W.Va. 82; 76 S.E. 124; *Phillips* v. *Hamilton*, 17 Wyo. 41; 95 Pac. 846.

" The object of the operations being to obtain a benefit or profit for both lessor and lessee, it seems obvious, in the absence of some stipulation to that effect, that neither is made the arbiter of the extent to which or the diligence with which the operations shall proceed, and that both are bound by the standard of what is reasonable."

After commenting on the fact that the lessee is not required to carry the operations on beyond the point where they will be profitable to him, even though some benefit to the lessor will result, the court adds:

" Whether or not in any particular instance such diligence is exercised depends upon a variety of circumstances, . . . Whatever, in the circumstances, would be reasonably expected of operators of ordinary prudence, having regard to the interests of both lessor and lessee, is what is required."

This definition of the scope of the implied covenant has been generally adopted in decisions of federal and state courts.[2] The facts demonstrate that the respondent has not complied with its obligations. It has held a half section for seventeen years without the drilling of an exploratory well, and claims to be entitled to hold the lease for an indefinite period with no exploration unless some other operator brings in a producing well on adjoining land, or fresh geological data come to light. The two producing wells are on the forty acres comprising the smaller of the adjacent areas embraced in the lease. The justification for the respondent's position is that the geologic data and the experience upon surrounding lands

---

[2] *Goodwin* v. *Standard Oil Co.*, 290 Fed. 92; *Becker* v. *Submarine Oil Co.*, 55 Cal. App. 698; 204 Pac. 245; *Daughetee* v. *Ohio Oil Co.*, 263 Ill. 518; 105 N.E. 308; *Austin* v. *Ohio Fuel Oil Co.*, 218 Ky. 310; 291 S.W. 386; *Prince* v. *Standard Oil Co.*, 147 La. 283; 84 So. 657; *Indiana Oil, Gas & Development Co.* v. *McCrory*, 42 Okla. 136; 140 Pac. 610; *Texas Co.* v. *Ramsower*, (Tex.) 7 S.W. (2d) 872; *Jennings* v. *Southern Carbon Co.*, 73 W.Va. 215; 80 S.E. 368; *Phillips* v. *Hamilton*, 17 Wyo. 41; 95 Pac. 846.

are both unfavorable to the discovery of oil or gas upon the east half of section 16 (the 320 acre tract). The respondent's officers state that they desire to hold this tract because it may contain oil; but they assert that they have no present intention of drilling at any time in the near or remote future. This attitude does not comport with the obligation to prosecute development with due regard to the interests of the lessor. The production of oil on a small portion of the leased tract cannot justify the lessee's holding the balance indefinitely and depriving the lessor not only of the expected royalty from production pursuant to the lease, but of the privilege of making some other arrangement for availing himself of the mineral content of the land.

The decisions [3] on which the Circuit Court of Appeals relied recognize and apply the rule of *Brewster* v. *Lanyon Zinc Co., supra,* but are distinguishable because of a difference in the circumstances in which the rule was applied. Some of them involved the duty to drill wells to offset others brought into production on adjoining lands; others turned upon a waiver by the lessor of the lessee's obligation to explore, or the meaning of the phrase " so long as oil or gas is produced in paying quantities." In none of them was there a neglect to explore or develop for any such period as is here shown, or an expressed intention not to do so, in a comparable situation.

The petitioners are entitled to relief in equity as they have no adequate remedy at law. *Brewster* v. *Lanyon Zinc Co., supra,* pp. 818–819; *Guffey* v. *Smith,* 237 U.S. 101, 114. The District Court decreed a cancellation as to all except a strip four hundred feet wide along the southern boundary of the SE¼ of the SW¼ of Section 16, con-

---

[3] *Goodwin* v. *Standard Oil Co.,* 290 Fed. 92; *Humphreys Oil Co.* v. *Tatum,* 26 F. (2d) 882; *Orr* v. *Comar Oil Co.,* 46 F. (2d) 59; *Denker* v. *Mid-Continent Petroleum Corp.,* 56 F. (2d) 725; *Pelham Petroleum Co.* v. *North,* 78 Okla. 39; 188 Pac. 1069; *Broswood Oil & Gas Co.* v. *Mary Oil & Gas Co.,* 164 Okla. 200; 23 P. (2d) 387.

taining about eight acres. The dissenting judge in the court of appeals thought that a decree should be entered cancelling the lease as to the 320 acre tract (the E½ of the Section) unless within a reasonable time an exploratory well should be drilled therein to the Mississippi lime, and that the 40 acres embraced in the SE¼ of the SW¼ of Section 16 should remain under the lease. We are of opinion that such a decree would recognize and protect the equities of both parties.

The judgment is reversed and the cause remanded to the District Court for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.