COWDEN et al. v. TEXAS DEVELOPMENT CO. et al.

No. 8193.

Circuit Court of Appeals, Fifth Circuit.

May 12, 1937.

Joseph G. Bennis, of El Paso, Tex., for appellants.

Henry G. Russell, of Pecos, Tex., and Frank Stubbeman, of Midland, Tex., for appellees.

Before FOSTER and SIBLEY, Circuit Judges, and STRUM, District Judge.

FOSTER, Circuit Judge.

Appellants brought this suit to cancel a mineral lease covering a large tract of land in block X, Crane county, Tex., alleging failure on the part of defendants to use due diligence to explore and develop the land for oil and other minerals. The bill prayed for cancellation of the lease and, in the alternative, for specific performance and for general relief. The answer denied that defendants were in default in developing the lease. A decree was rendered dismissing the bill. This appeal followed.

There is no dispute as to the law and very little as to the concrete facts. The decision must rest on the conclusion to be drawn from the facts. The material facts appearing from the record are as follows: On December 1, 1922, Cowden Bros. & Co. executed a mineral lease to S. F. Johnson covering sixteen sections of land in block X, Crane county, Tex., containing 10,000 acres, more or less. The term of the lease was ten years from date and as long thereafter as oil, gas, potash, or other minerals were produced from the land by the lessee or assignees. The privilege of assigning the lease in whole or in part was granted. A bonus of $2,500 was paid in cash. The lease provided for payment of $100 per section, or $1,600 per annum as a rental for the privilege of delaying drilling. A royalty of ⅛ of all oil or other minerals produced was retained by the lessors and it was provided that when the royalties amounted to as much per annum as the rentals the cash rentals should cease. The lease also provided that drilling should be done with machinery capable of drilling to a depth of 3,000 feet. There are other provisions of the lease, usual in such agreements, not necessary to be referred to.

Defendants acquired rights under the lease by assignment and now hold fractional parts of sections 3, 15, 16, 17, 18, 19, 20, 22, 23, 34, 35, 37, and 38 of the survey, containing approximately 3,000 acres. The land does not lie in one contiguous body, but is in scattered parcels throughout the original 10,000 acres. Except section 18, it is known as wildcat territory. About June 26, 1928, oil was discovered in paying quantities by defendants on the southwest quarter of section 18 and since that date 7 wells have been drilled on the said quarter section, all of which have been producers. They are capable of producing 1,030 barrels of oil per day, but the allowable under the proration orders of the Railroad Commis-

sion of Texas is only 216 barrels daily. Shortly before the filing of suit, defendants commenced drilling an eighth well on said quarter section as an offset well, designed to protect the section from drainage by a well drilled on section 81 adjoining. Except for this well, there has been no drilling on any part of the land since 1930.

Dry holes were drilled as follows: On section 16 in 1926; on section 34 in 1927; on section 19 in 1928; and on section 17 in 1929. In addition, another dry hole was drilled in 1927 on section 22, a portion of the land covered by the original lease but not held by defendants at the time of bringing this suit. It costs about $20,000 to drill a well on the land. A total of $260,000 was expended in drilling the 12 wells above mentioned. Defendants contributed to this cost. No production was secured except on the southwest quarter of section 18.

The above facts are covered by the findings of fact by the court and are not disputed. It is not disputed that plaintiffs are the owners of the land and that defendants hold the land by valid assignment. Also it is admitted that production from the land exceeds the cash rental stipulated.

Jax M. Cowden, one of the plaintiffs, and holding power of attorney from the others, testified that he had made demand on defendants for further development of the land outside of section 18; that he had applications from responsible parties, without naming them or the prices offered, for a lease of the land outside of section 18; and that he had received an offer of $1.50 an acre from the Humble Oil Company for a new lease of the land held by defendants, for a 10-year term, with a rental of 25 cents an acre.

Plaintiffs introduced the evidence of Lloyd, a geologist. Defendants introduced the evidence of DeChicchis, another geologist. Both qualified as experts and both had knowledge of the land covered by the lease. They agreed that it was impossible to determine the presence of oil on the land by surface indications and the only positive test would be the drilling of wells. The dry holes were located at from 6 to 8 miles from the producing wells on section 18. Some had been drilled to slightly more than 3,000 feet. The producing wells had been drilled to a depth of about 2,500 or 2,600 feet. Lloyd thought that production could be obtained at depths of approximately 6,000 feet; or, by the use of an acid

process or the use of nitroglycerin to "shoot" at lesser depths. It was shown that both the acid process and nitroglycerin were used on the wells in section 18 without increasing production and it is now necessary to pump them, increasing the cost of production about 35 cents per barrel. Lloyd thought that a dry well would condemn only about 40 acres in the particular vicinity. DeChicchis thought that the dry wells drilled condemned the whole territory.

It is well settled that under the law of Texas, after the production is secured, there is an implied condition in mineral leases that the lessee must use reasonable diligence to explore and develop the land, having in mind the best interest of both the lessor and the lessee. Cosden Oil Co. v. Scarborough (C.C.A.) 55 F.(2d) 634, and authorities therein cited. In that case we held that the burden was on the lessor to prove want of due diligence and that, on the facts shown, a case of cancellation was not presented.

Appellants rely mainly on the case of Sauder v. Mid-Continent Petroleum Corp., 292 U.S. 272, 54 S.Ct. 671, 78 L.Ed. 1255, 93 A.L.R. 454. In that case it appears the lease covered two adjoining tracts of land, one containing 320 acres and the other 40 acres. The lease was made on June 6, 1916. No development was attempted until an offset well was drilled on the 40-acre tract in November, 1921, and stopped when a second offset well was drilled on that tract in January, 1922. The suit was instituted in June, 1930. Except for the drilling of these two offset wells, there was no attempt at development for about 14 years. It may be inferred from the fact that it was necessary to drill offset wells that the land should not be classed as wildcat territory. It was held that the equities of both parties should be recognized and protected and that a decree should be entered canceling the lease as to the 320-acre tract, unless within a reasonable time an exploratory well should be drilled thereon, and that the 40-acre tract should remain under the lease. We do not consider that case is controlling when applied to the facts in the case at bar. Necessarily each case depends for decision upon its own peculiar facts. Armstrong v. Skelly Oil Co. (C.C.A.) 55 F.(2d) 1066. Here the lessees had been diligent in drilling wells on various parts of the land, in an effort to explore and develop it, and a large sum of money

had been expended for that purpose. Further drilling in the unproven territory would be expensive with little hope of success. It is not suggested that the owners of the land desire to develop it themselves. It is plain their desire is to have an opportunity to again lease it to others. The right to assign the lease, in whole or in part, is in defendants. To cancel the lease would deprive them of that privilege.

On the facts above stated the District Court found that there was not sufficient evidence in the record to justify finding that a reasonably prudent operator, having in mind the interest of both lessor and lessee, would drill any additional wells on the same property. We agree in this conclusion of the District Court. The equities are with the defendants.

The judgment is affirmed.