**TERRELL et al. v. MUNGER FARM CO. et al.**

No. 13906.

Court of Civil Appeals of Texas. Fort Worth.

May 12, 1939.

Rehearing Denied June 9, 1939.

M. W. Burch and C. T. Gettys, both of Decatur, and H. M. Muse, of Wichita Falls, for appellants.

Bullington, Humphrey & King, of Wichita Falls, for appellees.

BROWN, Justice.

On April 6th, 1916, S. I. and H. M. Munger executed an oil and gas lease to one H. W. Barton, as lessee, covering two large tracts of land, one being known as the north one-half of Section 30, which section contains 574 acres, and the other being known as the north one-half of Section 31, which section contains 616 acres; the lands so leased comprising about 595 acres.

This lease specifically provides:

"In case the party of the second part should bore and discover oil, gas or other minerals, then and in that event, this grant, encumbrance or conveyance shall be in full force and effect for five years from the time of discovery of said product and as much longer as oil, gas or other minerals can be produced in paying quantities; provided, however, that if oil is found in paying quantities in the first well, party of the second part shall within ninety days proceed with the drilling of another well, it being mutually agreed and understood between the parties hereto that the party of the second part shall use due diligence not only in putting down the first well but in successive wells if oil in paying quantities is found.

"A lapse of four months in operation shall be deemed a forfeiture of this grant, encumbrance or conveyance."

The lease further provides: "It is understood between the parties to this agreement that all conditions between the parties hereunder shall extend to their heirs, executors, administrators and assigns."

It thus appears that the right to assign in whole or in part was expressly given to the lessee, and it follows that all successive assignees stepped into the shoes of the original lessee and must of necessity have assumed the burdens and obligations imposed upon the original lessee, if such assignee or assignees were to enjoy the rights and privileges provided for in the lease.

W. E. Terrell and W. P. Thurmond years ago, to-wit, on February 15th, 1919, secured an assignment of the above mentioned lease in so far as it covered only 8 acres of the lands described in the original lease.

Terrell and Thurmond have never made any effort to develop the said 8 acre tract.

Appellee, Munger Farm Company, a corporation, and the admitted owner of the fee title to the lands in controversy, brought suit in trespass to try title against many persons, including Terrell and Thurmond, the appellants here.

Said appellants disclaimed as to all of the lands except the 8 acres described in their assignment, and they filed a cross-action in which they urged a plea of not guilty, and specially pleaded that under their assignment they owned a valid lease on the premises because the first lessee had drilled wells on a portion of the leased premises, which wells produced (the wells were not drilled on or near appellants' said 8 acre tract), and that appellee, Munger Farm Company, and others, had "impugned and slandered the title and rights of these said defendants in said 8 acres of land, especially their title to said oil, gas and minerals therein and their right to operate thereon and to explore for and produce such oil, gas and minerals from said tract of land, which said slanderous instruments and records thereof include:" Here follow descriptions of leases made by Munger Farm Company, and assignments, etc., which cover the 8 acres, in which appellants claim a superior right.

Appellants prayed that plaintiff take nothing as against them, affecting their right to the leasehold interest in the said 8 acre tract, and for damages against the plaintiff and against these cross-defendants who now hold under the plaintiff.

Appellants were met with pleadings asserting that they had abandoned the lease; that they had failed to comply with the terms of the lease, in that they had not attempted to explore the 8 acres for oil, and had therefore forfeited all rights to the leasehold interest; that the wells which had been drilled on other portions of the large tracts were no longer commercial producers, and had not been such for many years; and that the present owners held the lands and present leasehold interests adversely to appellants and their rights were barred by limitations.

The cause was tried to the court and judgment was rendered for the plaintiff and against appellants on their cross action. Hence the appeal.

The trial court filed findings of fact and conclusions of law.

It was found that no money consideration was given for the original lease and that the sole consideration was "the ex-

ploration and development of the said lands for oil and gas and the prospective royalties which the lessor expected to receive from such development."

The provisions of the lease show that such a finding is correct.

It was found that two producing oil wells were drilled on a tract not even adjacent to the 8 acre tract here in controversy. That these two wells have not produced oil in paying quantities since 1930; that a deeper well was brought in on another portion of the large tract, but that it has not produced oil in paying quantities since January 1st, 1932.

It was found that there was no attempt to develop any part of the lands from the year 1918 up to the year 1922, and that the lessors brought suit in 1922 against the original lessee and several assignees and recovered title and possession and a cancellation of the lease, except as to 20 acres on which the first two wells were drilled and a 5 acre lease on which the third and deep well was drilled. That Terrell and Thurmond were not made parties to that suit.

That after the lease was thus canceled, the Mungers and their successors in title executed various other leases on the lands and under such new leases one Hammond and the Consolidated Oil Company drilled on the lands, Hammond's well being a producer but the other well was nonproductive. That for more than 10 years prior to the filing of this suit, Munger Farm Company openly claimed the lands and all minerals in and under the lands, and had paid all taxes assessed against the mineral rights for more than 5 years before this suit was filed and before such taxes became delinquent. That oil and gas was discovered in paying quantities in the first wells drilled in 1917 and 1918, and thereupon, under the express terms of said lease, it became the duty of the lessee and his assigns to use due diligence in putting down successive wells, and that the lessee and his assigns and Terrell and Thurmond failed to use due diligence in such respect.

That the provisions in the lease, to-wit: "A lapse of four months in operation shall be deemed a forfeiture of this grant", provided and was intended to provide that a lapse of four months in drilling operations should constitute a forfeiture of the lease, and such provision was breached by the lessee and his assigns.

The court further found that Terrell and Thurmond never intended to drill or develop the 8 acre tract, unless other development, by other persons, in and around the property, should prove the 8 acre tract profitable, and that in the absence of such indication, they did not intend to drill on their 8 acre tract, and that their acts and conduct constituted an abandonment of the lease. The court found against the plaintiff on the issue of title by limitation, and concluded as follows: "I conclude from the foregoing facts found that under the express terms of said lease there has been a breach of the conditions by the lessee and his assigns resulting in a forfeiture; that, in addition thereto, the defendants, Terrell and Thurmond, have lost any right, claim or title in and to said lease by virtue of an abandonment thereof and have rendered judgment against them on said grounds."

Eight propositions are urged by appellants.

■ The first contends that the original lease contains specified grounds of forfeiture that do not include lack of due diligence in the matter of drilling operations, and such ground of forfeiture cannot be implied.

We think that the lease contains language clearly providing that successive wells must be drilled in order to keep the lease in force, and that this was not done. and clearly providing that a lapse of operation for four months shall work a forfeiture, and that the language clearly covers drilling operations, and that operations lapsed for more than four months. In fact it is evident that Terrell and Thurmond never even began "operation" on the 8 acre tract.

The Supreme Court, in Texas Company v. Davis, 113 Tex. 321, 335, 254 S.W. 304, 307, said: "If it were true that the full purpose of the contract was to merely prove the 76½ acres to be oil-bearing, there would be reason for saying that completion of a successful test vested indefeasible rights in the grantee or his assigns for 25 years or longer, but to so prove the land was no more than the first step towards the accomplishment of the true and ultimate purpose of all parties, viz. the mutually profitable production of oil, gas, or other valuable mineral. Grubb v. McAfee, 109 Tex. [527] 531, 212 S.W. 464. The title and rights conveyed to Under-

wood or his assigns were to be held and used for no other purpose than mineral exploration, development, and production. When that purpose was no longer prosecuted by Underwood and his assigns, their title and estate instantly terminated."

This pronouncement was followed by our Supreme Court in the later case of Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 517, 19 S.W.2d 27, and in many other cases which could be cited.

To hold otherwise in such a case as the one at bar, where the very language of the lease shows that its purpose was the actual and diligent development of the entire tract for the production of oil and gas, in paying quantities, would be to lend assistance to a lessee who did not purpose to develop the lands covered by his lease, and to give him an unconscionable advantage over his lessor—the owner of the land.

By propositions two and three, it is urged that the provision covering "a lapse of four months in operation" cannot "be limited and qualified by strained construction to mean drilling operations", but that such words were intended to cover operation of wells that were drilled on the lands; and that the said provisions "cannot by strained construction be made to apply to some part of the leased premises and at the same time leave another portion in full force and effect where wells are actually being operated".

As we view the lease before us, instead of the construction, placed upon its provisions by the trial court, being strained, it is the natural and correct construction, and the construction urged by appellants seems to us a bit strained.

Examining the lease, we find a paragraph providing that unless the drilling of a well be commenced within 90 days from the date of the lease, "the grant shall immediately become null and void as to both parties". This is followed by the provisions quoted above, covering the fact of the drilling of a discovery well, the continuance of the lease for five years thereafter and as much longer as oil, gas or other minerals can be produced in paying quantities, which provision is immediately followed by the further proviso that should oil be found in paying quantities the lessee shall within 90 days proceed with drilling another well, and continues with the provision that it is mutually agreed and understood that the lessee shall use due diligence not only in putting down the first well but in successive wells, if oil in paying quantities is found.

Then follows the paragraph concerning a forfeiture if there is "a lapse of four months in operation".

It is clear to us that the language used of necessity refers to the drilling operations mentioned and contracted for in the preceding paragraph.

Appellants made no effort to comply with these provisions of the contract.

Propositions four and five contend that the subsequent leasing by the owners and the acceptance and use of such leases by the present lessees and assigns constitutes a repudiation of the rights of appellants, under their lease, and that such conduct relieved appellants of the burden of either forfeiture or abandonment; and that it is not shown that appellants abandoned their rights before such repudiation on the part of the owner and those claiming under him.

We readily see how this contention might be sound if the adverse acts of the owner and his lessees and assigns had taken place at a time when appellants were protected by the terms of their lease from taking any steps toward the development of the tract in which they were interested. But the facts developed show that appellants had lost all of their rights long before the adverse acts complained of were had and done.

The sixth proposition contends that the lease under which appellants claim does not by its terms require any specified amount of drilling save and except the drilling of a discovery well and the drilling of one other well, after the drilling of such discovery well, within 90 days, and that all successive wells were to be drilled only when due diligence required such drilling, and that no notice or demand for further drilling having been given or made by the owner, appellants were justified in waiting for more favorable circumstances before they undertook to develop their tract.

We do not so construe the lease, but believe that the language used therein clearly shows that the due diligence required in the drilling of "successive wells" is the same as that required for the drilling of the discovery well and the well required to be drilled within 90 days after the discovery well is completed. The lan-

guage of the lease does not seem to us susceptible of any other fair construction.

It appears to us that, for the express purpose of clinching the toe of the nail, there was inserted in the contract, immediately following all of the provisions relating to diligently developing the property, the paragraph which declares that "a lapse of four months in operation shall be deemed a forfeiture of this grant, encumbrance or conveyance."

All matters that relate to "operation" precede these provisions and we unhesitatingly hold that the language includes drilling operations.

We see no justice in holding that the owners of this small tract, carved out of a tract of almost 600 acres, have the right to wait until production is found on a tract adjacent to their small tract before they are required to attempt development.

■ The very fact that the original lease gave the lessee the right to assign carries with it the burdens and obligations that rested upon the lessee and necessarily imposes them upon each and all of his assigns.

If this were not sound, then we ask: Suppose the original lessee had immediately executed 20 separate and distinct leases to different persons, each assignment conveying 30 acres, which assignee would be required to drill the first discovery well? And, after it was drilled by one of the assignees, whose duty would it then be to drill the next well? And, carrying the operations on, after the first assignee drilled out his 30 acres, whose duty would it then be to first begin drilling on an adjacent, or contiguous tract?

Going further, let us suppose that the original lessee assigned nineteen of the twenty thirty-acre tracts, and retained a 30-acre tract in the center of the 600 acres, could he impose upon his assignees the obligation to develop their tracts and sit idly by until the development near him required him to drill on his tract?

We think not, and yet that is exactly what his assignee is contending for.

■ The assignee did not get any right under the lease that the original lessee did not receive.

To attempt to reason out the matter in order to ascertain who has the right "to only stand and wait" and yet claim that he "serves", becomes reductio ad absurdum.

■ The seventh proposition contends that the intention of Terrell and Thurmond to drill only in the event that drilling in surrounding lands indicated that oil was present, does not amount to or show an abandonment by the assignee-lessee.

In the light of this lease, and in the light of the fact that two producing wells had been brought in on some other portion of the tract covered by the original lease, we think that Terrell and Thurmond abandoned their lease and that their testimony establishes this fact, as well as a forfeiture, and the trial court correctly so found.

The eighth proposition is, in effect, that the trial court erred in rendering judgment against appellants.

Again quoting from Texas Co. v. Davis, supra, we find the Supreme Court saying: "We are convinced: First, that Underwood [lessee] and his assigns took only a determinable fee under the grant from Arnold and wife, which terminated long ago; and, second, that abandonment of the purpose for which Underwood and his assigns were invested with their title and rights in and to the minerals and land was necessarily fatal to the maintenance of the suit of defendants in error."

In Munsey v. Marnet Oil & Gas Co., 113 Tex. 212, 254 S.W. 311, 314, the Supreme Court said: "we find nothing from this court to give support to the theory that one can repudiate his drilling obligations and still hold the estate which is granted for the sole purpose of securing performance of such obligations. The doctrine seems to have scant support in the American decisions."

The Supreme Court of the United States, in the case of Sauder v. Mid-Continent Pet. Corp., 292 U.S. 272, 54 S.Ct. 671, 674, 78 L.Ed. 1255, 93 A.L.R. 454, said: "The respondent's officers state that they desire to hold this tract because it may contain oil; but they assert that they have no present intention of drilling at any time in the near or remote future. This attitude does not comport with the obligation to prosecute development with due regard to the interests of the lessor. The production of oil on a small portion of the leased tract cannot justify the lessee's holding the balance indefinitely and depriving the lessor, not only of the expected royalty from production pursuant to the lease, but of the privilege of making some other arrangement for availing himself of the mineral content of the land."

See, also, American Wholesale Corp. v. F. & S. Oil & Gas Co., 242 Ky. 356, 46 S. W.2d 498.

Finding no error, the judgment of the trial court is affirmed.