SPURLOCK et al. v. HINTON et al.

No. 14127.

Court of Civil Appeals of Texas. Dallas.
Oct. 28, 1949.

Rehearing Denied Nov. 25, 1949.

E. A. Landman, of Athens, and Bonner R. Landman, of Jackson, Mississippi, for appellants.

Sam Holland, of Athens, and Jones & Jones, of Mineola, for appellees.

BOND, Chief Justice.

On May 23, 1946, W. J. and R. M. Spurlock were owners in fee of approximately 468.8 acres of land out of the Joseph Rice Survey in Henderson County, and on said date executed and delivered to W. B. Hinton an oil, gas and other minerals lease in the usual Texas form, with covenant reserving ⅛th of the market value at the well of all oil, gas and minerals produced from said land. The lease, pertinent here, provides that "The breach by lessee of any obligation arising hereunder shall not work a forfeit or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part. In the event lessor considers that operations are not at any time being conducted in compliance with this lease, lessor shall notify lessee in writing of the facts relied upon as constituting a breach hereof, and lessee, if

in default, shall have sixty days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument. After the discovery of oil, gas or other mineral in paying quantities on said premises, lessee shall reasonably develop the acreage retained hereunder, but in discharging this obligation it shall in no event be required to drill more than one well per forty (40) acres of the area retained hereunder and capable of producing oil, gas or other minerals in paying quantities."

On June 4, 1946, the lessee Hinton filed with the Texas Railroad Commission notice of intention and request for permit to drill three wells on the leased premises, at various locations. The Commission granted the permit and well No. 1 was drilled in the southeast corner of the lease, completed on August 19, 1946, at a depth of 7,846 feet, resulting in production of distillate, barrels 148.8; and since that time said well has been producing distillate oil in paying quantities to the date of this suit. The royalty reserved to the lessors has been paid to them in excess of $24,000. There has been no other well drilled on the lease.

The appellants, as plaintiffs in the court below, instituted this suit against appellees W. R. Hinton and assignees, as defendants, to cancel the lease for failure of defendants to use reasonable diligence in furtherance of development of the lease after oil and gas had been discovered thereon in commercial quantities,—tantamount to a breach of an implied covenant on the part of the lessee in failing to develop other portions of the lease premises. The defendants answered by general denial and, specially, that they had not abandoned the development of the lease, or any part thereof, but on the contrary had expended in excess of the sum of $50,000 in drilling a producing well on the lease, and that the well is a commercial well; that the land covered by said lease is located in what has been denominated the Tri-Cities Field, Henderson County, Texas; and in that field the Railroad Commission of Texas, on November 11, 1946, made an order fixing the proration unit for production at 320 acres, with a tolerance not to exceed 32 acres on any producing tract;

that by reason of said rules and regulatory orders of the Railroad Commission the defendants could not obtain other production from the lease, beyond that produced from the well they had already drilled,—the allowable according to the rules and regulations of the Railroad Commission.

The case was tried to a jury and, at the conclusion of the testimony, on motion of the defendants, the court peremptorily instructed a verdict for the defendants and entered judgment accordingly.

The case is presented in this appeal on a number of assignments and points of error, the principal and controlling contention being that the lease terminated by virtue of the failure of appellees to use reasonable diligence in developing the lease by drilling additional wells into other structure of oil-bearing lime or sand on the leasehold; that appellees were under an implied covenant to extend further developments after oil and gas had been discovered in commercial quantities; and that their failure to so extend development was, in effect, an abandonment of the lease estate.

The record evidence wholly fails to support plaintiffs' contention; but shows that the defendants have developed the lease estate in so far as it could be developed under the proration unit order of the Railroad Commission and the geological and geophysical surveys of the oil and gas bearing strata of that field. The well drilled has been producing the maximum gas and distillate from the time it was brought in until the date of trial. It was drilled through the Bacon Lime strata, or first formation, at a depth of 7,200 feet, into the Rhodessa, or second formation, at 7,700 feet, at an expense of over $50,000; and there salt water was encountered. The well was then plugged and set back to the Bacon Lime strata for commercial production. Under the rules and regulations prescribed by the Railroad Commission, the well drilled was the only well permitted to be drilled into the Bacon Lime on that lease; and the evidence is that the well, in time, would drain all oil and gas from the Bacon Lime. Further, the evidence is that, due to the natural dip of the oil strata to the west and north of the producing well, the Bacon

Lime Strata extends below the water level; thus a well drilled either to the west or the north of the producing well would encounter salt water. There is no evidence that other strata of lime or sand underneath the lease surface, save that of the Bacon Lime, would produce oil or gas.

■ If, in truth, the lessee and his assigns had been negligent in failing to use reasonable diligence in developing the lease, which is not reflected in the record, such, we think, would not warrant the suit for cancellation, but one only for damages. Only "under extraordinary circumstances—where there can be no other adequate relief—a court of equity will entertain an action to cancel the lease in whole or in part." Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27, 29. No such circumstances exist in the instant case.

Therefore we are of the opinion that, appellants having alleged and the uncontroverted evidence being that there is a producing well on the lease in question which has been producing gas and distillate for more than 2½ years to time of trial, and appellants having received their royalty payments, the lease being a unit of approximately 468.8 acres, as a matter of law it cannot be said that the failure of development would warrant forfeiture.

In Hines v. Hanover, 23 S.W.2d 289, opinion by the Commission of Appeals, approved by the Supreme Court on facts similar as here, it was held that the plaintiff was not entitled to cancellation of oil and gas lease for failure to properly and fully develop land after oil had been discovered, where there was no abandonment of the lease, but the evidence showed at least partial or imperfect use of the land. In Gibson v. Sheldon et al., Tex. Civ. App., 90 S.W.2d 841, writ ref., the court, in a lease situation similar as here, held that a lessor was not entitled to recovery of lands or cancellation of lease where oil was being produced from wells on the lands covered by an oil and gas lease, so long as oil and gas were produced; his remedy being an action for damages if lessee or assignees failed to exercise reasonable care in exploration or production. In the case of DaCamara et al. v. Binney et al., 146 S.W.2d 440, 441, dis.judg.cor., in a situation similar as here, the San Antonio Court of Civil Appeals held that "The appellants are not entitled to a judgment cancelling a part of the Henry James lease—the 720 acres in question—on the theory of abandonment. It was shown without dispute that oil is still being produced under the James lease. * * * And since it appears that the James lease had not been wholly abandoned, as a matter of law there can be no abandonment of a part of that indivisible leasehold estate."

As we view this case, the record presents no reversible error. The judgment of the court below is affirmed.

■ In motion for rehearing appellants further justify their position to cancel the lease for appellees' failure in further development of the lease estate, particularly as to 116.8 acres upon which there had been no drilling and no effort made to unitize said acreage with adjoining leases to form a unit of 320 acres in compliance with the rulings of the Texas Railroad Commission, on authority of Sauder v. Mid-Continent Petroleum Corporation, 292 U.S. 272, 54 S.Ct. 671, 78 L.Ed. 1255, 93 A.L.R. 454. In that opinion, at page 674 of 54 S.Ct. at page 459, of 93 A.L.R., it will be seen that the Supreme Court made comparable a situation where lease is held for a definite period of time; and there is no covenant of extension for development "so long as oil or gas is produced in paying quantities"—only an implied equitable covenant in such a case to extend development even though oil or gas was produced in paying quantities. In a situation where the lessee holds under contract extending the lease over the entire tract of land for a term of years and "so long thereafter as oil, gas or other minerals is produced from said land," there is no implied equitable covenant to further extend developments.

■ Appellees, Hinton and associates, held a lease by contract over the entire 468.8 acres of land with exclusive right to investigate, explore, prospect, drill, and mine for and produce oil and gas and all other minerals for a period of ten years and "so long thereafter as oil, gas or other

minerals is produced from said land, or lands with which said land is pooled thereunder." The record evidence shows that they have drilled a well on the lease and it has been producing gas and oil in paying quantities up to the date of trial; hence their lease is not sounded in equity. There can be no implied covenant to further develop the lease as to entitle appellants to the relief in equity by decree of cancellation of the lease or any part thereof, or for damages, in absence of pleading and proof, for the failure to do so.

Motion for rehearing is overruled.