### ROMERO v. HUMBLE OIL & REFINING CO. et al.

### Civ. No. 2424.

United States District Court

E. D. Louisiana, New Orleans Division.

Sept. 28, 1950.

118

Helm & Simon, New Iberia, La., Warren M. Simon, New Orleans, La., Lawrence P. Simon, New Iberia, La., for plaintiff.

Tinsley Gilmer, Charles Janvier, New Orleans, La., for Humble Oil & Refining Co.

J. Claude O'Quin, Shreveport, La., for General American Oil Co.

WRIGHT, District Judge.

In this action plaintiff is seeking cancellation of an oil, gas and mineral lease on his property for failure of the lessee to develop the leasehold, an eight hundred seventy-six acre tract of land situated in the Little Bayou Oil Field, Iberia Parish, Louisiana. The defendant, Humble Oil and Refining Company, acquired the lease by deed dated June 6, 1944 and assignment dated June 27, 1944.

Humble Oil and Refining Company drilled Romero No. 1 well and abandoned it on April 20, 1946. In March of 1946 Romero No. 2 well was completed by Humble as a gas condensate well and has been and still is producing in paying quantities. After demand made by plaintiff for further development, Humble drilled Romero No. 3 well and abandoned it in March of 1948.

On November 23, 1948 plaintiff made written demand on Humble for additional drilling operations or a further development of the leased property. By letter dated January 19, 1949, Humble advised the plaintiff as follows: "Your letter of November 23rd was forwarded to our Law Department for consideration, and since that date we have been advised that Humble Oil and Refining Company has complied with the terms and conditions set forth in said lease. We therefore do not contemplate any further operations on the land covered thereby."

General American Oil Company of Texas, intervenor herein, through sublease from Humble now owns the oil, gas and mineral lease affecting plaintiff's land and Humble has retained a one-sixteenth overriding royalty. General American has not conducted any drilling operations on plaintiff's property and has indicated that it has no plans for further development of the leasehold other than to maintain the Romero No. 2 well.

The lease provides that it shall continue in effect as long as gas or oil is produced from the leasehold in paying quantities and the defendant Humble and intervenor, General American, maintain that since Romero No. 2 well is admittedly producing in paying quantities the lease is in full force and effect and should not be cancelled. They maintain further that Humble has spent $484,000 in drilling on the premises; that General American has spent $12,000 reworking Romero No. 2 well; that they have sufficiently developed the leasehold; that no prudent operator would drill any additional well and that their lease should continue in effect. Defend-

ant and intervenor have also filed a plea of estoppel on the ground that Romero No. 3 well was drilled in compliance with the demand of the plaintiff for further development, and therefore, the plaintiff is not in a position to demand cancellation of the lease for non-development.

Plaintiff on the other hand has produced evidence from an admittedly experienced oil and gas operator and driller to the effect that he is ready and willing to lease plaintiff's property and to drill a well thereon without delay. Plaintiff contends that since a reasonably prudent operator would further explore and develop his property and since the defendant and intervenor have refused so to do, that the lease in suit should be cancelled, except for twenty acres around Romero No. 2 well. Plaintiff further contends that the judicial ascertainment clause in the lease should not be invoked for the reason that defendant and intervenor have judicially admitted they will not develop his property.

■ It is conceded by all parties that there is in every oil and gas lease an implied covenant on the lessee's part to continue the work of exploration, development and production. Carter v. Arkansas Louisiana Gas Co., 213 La. 1028, 36 So.2d 26. It is further conceded that the test to be applied in determining compliance with this obligation is whether in the circumstances a reasonably prudent operator would drill an additional well or wells. Carter v. Arkansas Louisiana Gas Company, supra; Sauder v. Mid-Continent Petroleum Co., 292 U.S. 272, 54 S.Ct. 671, 78 L.Ed. 1255, 93 A.L.R. 454.

Plaintiff rests his case on the testimony of the witness Rebstock, an experienced operator and driller, and his geologist, Courtney. Courtney testified that he recommends the drilling of a deep well midway between Romero No. 1 and Romero No. 2, a location previously staked out by Humble for drilling but never drilled. Courtney stated his studies indicate that Germany No. 2 sand, a producing sand in an adjoining leasehold, should be found under the Romero property if a well is drilled as recommended. Rebstock, the driller, testified he would drill as recommended by Courtney as soon as he obtains the lease. There is no question of Rebstock's financial responsibility.

Defendant and intervenor rely on the testimony of three geologists all of whom maintain that Courtney has incorrectly interpreted the geological data on the Romero tract and that his correlation of the logs of the wells on the Romero and Germany tracts is in error. It also appears that at least one of intervenor's geologists has had years of experience with the Little Bayou Field, whereas Courtney admittedly devoted but three weeks to his study of the oil and gas potential under the Romero property.

■ If the decision in this case were to rest solely on the opinion of geologists, there is little question but that the defendant and intervenor would prevail. Their geologists have analyzed the testimony of Courtney and have shown where in their opinion he fell into error. Their numerical superiority as well as their extended experience with the Little Bayou Field weigh well in their favor. However, this case cannot be decided on geological testimony alone for geology is less than an exact science, particularly oil and gas geology concerning piercement type salt domes and the Little Bayou Dome is of the piercement type. The court will take judicial notice of the fact that many oil and gas fields around piercement type domes in South Louisiana have been discovered only after the drilling of many dry holes and the abandonment of previous leases. Apparently geologists have been unsuccessful in fathoming the mysteries of this type dome and operators have been relegated to some extent to the empirical approach in exploring for the oil and gas which is often found nearby.

■ In spite of the insistence by defendant's and intervenor's geologists that no reasonably prudent operator would drill additional wells on the Romero property, the bald fact remains that plaintiff has an ex-

120

perienced operator who is willing, ready and able to drill his land, and the oil companies, while refusing to drill, are fighting desperately to maintain their lease. If the possibility· of producing oil and gas is so remote of what value is the lease? This attitude is inconsistent with the implied, obligation of the lessee to develop the property and if persisted in must result in the cancellation of the lease. It is not in the public interest nor in the national interest that property, particularly potential oil property, be kept out of commerce and undeveloped. Hutchinson v. Atlas Oil Co., 148 La. 540, 87 So. 265.

■ Under decisions of the Supreme Court of the United States as well as the Louisiana Supreme Court a mineral lessee must either develop his leasehold or give up his lease. If a reasonably prudent operator in the circumstances would continue exploration and development then so must the lessee. His failure so to do amounts to an abandonment of the lease. Carter v. Arkansas Louisiana Gas Company, supra. In the circumstances of the case at bar a reasonably prudent operator has agreed to drill on the premises, provided he can get the lease. Under the judicial ascertainment clause unless the intervenor will match this offer, the lease must be cancelled.

■ The estoppel urged by defendant and intervenor is without merit. A lessor is not estopped from insisting that .a lessee comply with his obligation under the lease merely because he has made the same demand previously. A lessor who demands and obtains his rent one month is not estopped from making the same demand the following month. Under the lease in suit instead of ·paying rent the lessee has· agreed to develop the mineral estate. ·When it stops developing the mineral estate, the tenancy must cease by eviction.

The defendant and intervenor will have sixty days to satisfy this court that they intend to develop further the leasehold; otherwise the ·lease will be cancelled with. the exception of twenty acres around Romero No. 2 well.