Mrs. Mae Mallary SALYER et al.,
Plaintiffs,

v.

The CALIFORNIA COMPANY,
Defendant.

Civ. A. No. 7420.

United States District Court
E. D. Louisiana,
New Orleans Division.

July 7, 1958.

288

René R. Nicaud, New York City, for plaintiffs.

Eugene D. Saunders, Andrew Mc-Collam, Jr., Robert L. Redfearn, New Orleans, La., for defendant.

J. SKELLY WRIGHT, District Judge.

Plaintiffs here seek partial cancellation of an oil and gas lease and both sides have moved for summary judgment. The lease is dated April 24, 1952, and covers two noncontiguous tracts in Lafourche Parish, one of 20 acres and the other of 80 acres. It provides that, in consideration of $500 and a ⅛th royalty interest, the lease shall remain in force for a primary term of three years, and thereafter "so long as oil, gas or other mineral, or any one or more of them, is produced from said land hereunder;" or "so long as Lessee is engaged in drilling, mining or reworking operations on said land hereunder." The lessee, The California Company, is required to begin drilling within twelve months, which period may be extended, during the primary term, by the payment of an annual delay rental of $500.

On May 5, 1955, The California Company paid the lessors $5,000 and increased the lessors' royalty to ⅙th in return for a three-month extension of the primary term to July 24, 1955. On July 19, 1955, a well producing both gas and oil was completed on the 80-acre tract. There has never been any drilling on the 20-acre tract itself, but on February 4, 1956 the lessee began an exploratory well on adjoining property, 400 feet from the west line of the 20-acre tract. It was completed as a gas well on June 9, 1956, but was capped and maintained as a shut-in well until further drilling in the area should produce enough gas to warrant the construction of a pipeline for marketing it.

With reference to the 20-acre tract, which is the subject of this litigation, the lessors sent the lessee the following letter on July 25, 1956:

"Gentlemen:

"There has been no development on the above described property covered by this lease, nor has there been any drilling on any of the property covered by the lease, other than the well drilled on the property noncontiguous to that above described, which well was completed over a year ago.

"Under the circumstances, we consider that you are not diligently endeavoring to produce minerals in paying quantities from the above property.

"The purpose of this letter is to call on you, on behalf of the lessors, to immediately commence the drilling of a well on the above property, and to notify you that if you fail to do so by September 30, 1956, the lessors will consider the lease terminated."

The lessee replied as follows on August 1, 1956:

"As you undoubtedly know, we have drilled a well off-setting this acreage more specifically located in the northeast quarter of the northwest quarter of Section 28. This well is classified as a shut-in gas well at the present time. We are in the hopes of producing it in the near future. We are presently forming a 160 acre gas unit, which will include all of the above described tract."

At the same time, lessee continued drilling in this area, although not on lessors' tract. A second well was begun on August 12, 1956 and abandoned as a dry hole on September 29, 1956. A third

well, begun on December 6, 1956, was also abandoned as a dry hole on April 18, 1957. The fourth well, begun on April 21, 1957, was successfully completed as a gas well on June 16, 1957. A fifth well was begun in July and abandoned in August 1957.

On September 3, 1957, lessors sent lessee a second letter regarding the 20-acre tract:

"Reference is had to our letter of July 25, 1956 formally placing your Corporation in default, as lessee, for nondevelopment of the above described property covered by this lease, and notifying you that unless the drilling of a well on the above property was commenced by September 30, 1956, the lessors would consider the lease terminated as to this property.

"The drilling of a well was not commenced as requested in our letter of July 25, 1956, and the lease has, therefore, terminated because of non-development. On behalf of the lessors, pursuant to the provisions La.R.S. 30:102 demand is made upon you to furnish me for the lessors, within ten days from this demand, an acknowledged instrument directing the cancellation of the lease from the records of the Parish of Lafourche, Louisiana, insofar as it affects the above property."

Lessee replied on September 13, 1957:

"We have previously advised you of the fact that The California Company has prosecuted a vigorous development program in this area which resulted in completion of a productive well on an adjacent tract. We are currently proceeding to form a producing unit surrounding this well which will include all or a portion of the 20-acre tract referred to above. Negotiations for construction of a pipeline and other producing facilities necessary for the transportation and sale of produc-

tion from this well are expected to be completed very shortly.

"In view of the above, we think it is fairly obvious that the lease covering the 20-acre tract in question has not terminated and is being properly maintained by production obtained from another portion of the leasehold premises, and our development program in the area has been and will continue to be prosecuted with all due diligence."

By means of a declaration of pooling and unitization dated December 12, 1957, a 130-acre gas unit was created which included all of the plaintiffs' 20-acre tract. On January 31, 1958, the pipeline was completed and the marketing of the gas from this unit began. This suit was filed in the state court on December 20, 1957, and it was removed here by the defendant-lessee.

■ The plaintiffs' asserted right to cancellation is based primarily on their belief that the production of oil and gas from the well on the 80-acre tract did not continue the lease beyond the primary term as to the 20-acre tract; that the lessee was obliged to drill on each of the two tracts before July 24, 1955; and that lessee's failure to do so was a breach of an express obligation of the lease which could not be cured by later action once the lessee had formally been placed in default by lessors' demand letter. Unfortunately, plaintiffs' position finds no support either in the language of the lease or in the law of Louisiana. The Louisiana Supreme Court has on two occasions,[1] in interpreting lease contracts covering several noncontiguous tracts, held that the expressed intent of the parties must be given effect and that when the lease refers to several separate tracts as a single unit, it cannot be said that the parties intended to enter into a separate lease on each tract obliging the lessee to explore and exploit each tract separately in order to maintain the lease as

1. A. Veeder Co. v. Pan American Production Co., 205 La. 599, 17 So.2d 891; Nabors v. Producers' Oil Co., 140 La. 985, 74 So. 527, L.R.A.1917D, 1115.

to each particular tract. Here the lease throughout refers to the lessors' two tracts collectively as "said land." Nowhere in the lease are the obligations of the parties related to either of the tracts individually. Thus, by the very terms of the lease, the lessee's expressed obligations were satisfied by the completion of a single well "on said land," in this case the 80-acre tract. This continued the lease as to both tracts beyond the primary term.[2]

Nevertheless, lessee's compliance with the express terms of the lease by drilling a single well will not necessarily maintain the lease indefinitely. In contracts such as the present one, where the principal consideration is the royalty received by the lessor from actual production, the law of Louisiana implies, and imposes on the lessee, a further obligation to continue, after the primary term, to develop all parts of the leased property as diligently as would a reasonably prudent operator under the circumstances. Eota Realty Co. v. Carter Oil Co., 225 La. 790, 74 So.2d 30; Carter v. Arkansas Louisiana Gas Co., 213 La. 1028, 36 So.2d 26; Romero v. Humble Oil & Refining Co., D.C., 93 F.Supp. 117, affirmed 5 Cir., 194 F.2d 383; cf. Sauder v. Mid-Continent Petroleum Co., 292 U.S. 272, 54 S.Ct. 671, 78 L.Ed. 1255. In the first two of these cited cases, there had been no development whatever of one part of the leasehold, and cancellation of the lease was granted as to that part. Plaintiffs urge a similar result in the present suit, alleging, as a second ground for cancellation, that the lessee failed reasonably to develop the 20-acre tract.

This is not a case where the lessee, considering prior development to be sufficient, has refused to proceed further. See Eota Realty Co. v. Carter Oil Co., supra. On the contrary, six months after the well was completed on the 80-acre tract, lessee began an exploration program directly related to the 20-acre tract, and all of that tract is now included in a producing unit. Plaintiffs do not now contend that the exploration should have been conducted in some other manner. Plaintiffs' letter demand for drilling on the 20-acre tract itself was based on the erroneous opinion that the lease expressly required such action within the primary term. For present purposes, plaintiffs' letter must be construed simply as a demand for reasonable development. The letter called for compliance by September 30, 1956. Plaintiffs contend, not that lessee's plan of development was itself inadequate, but that the creation of a producing unit including plaintiffs' 20-acre tract on December 12, 1957 came too late. Plaintiffs' theory seems to be that since no royalties could be received from the 20-acre tract until it was included in a producing unit, there was no actual development of that tract until the unit was created; and further, that such unitization should have taken place by September 30, 1956, plaintiffs' demand date, in order to qualify as reasonable development.

This theory might have some force if applied to lessee's express obligation to drill on plaintiff's land, or on a unit including plaintiffs' land, during the primary term of the lease. See Wilcox v. Shell Oil Co., 226 La. 417, 76 So.2d 416. However, the obligation reasonably to develop is an implied obligation not governed by the express terms of the lease. This lease contains no requirement that the lessee must unitize before drilling on adjacent property if such development is to be "reasonable." Nor is there any specific time set within which such development must be carried out. This obligation reasonably to develop is implied in law and its limits can only be determined by the Court according to the particular circumstances of each case, and by reference to a reasonable standard not expressed in the contract. Cf. Carter v. Arkansas Louisiana

2. See Reagan v. Murphy, La., 105 So.2d 210, in which the nature of a mineral lease in Louisiana is explained and distinguished from a mineral servitude.

Gas Co., supra. The default letter sent by the plaintiffs is a prerequisite to suit in this jurisdiction for cancellation of a lease, LSA–CC art. 1912, but it cannot, by itself, add new and specific terms to the lease.

In the present case it is not contended that the lessee has not acted in good faith with respect to plaintiffs' interests, and it has not been demonstrated that the unitization in question could have been achieved more quickly. Although lessee's performance may not have been entirely satisfactory to the plaintiff, there is nothing in the case to show that plaintiffs were entitled to more than was actually received. The pleaded facts do not warrant the cancellation of this lease.

Judgment for the defendant.