Lake, Appellant, *v.* The Ohio Fuel Gas Co. et al., Appellees.

(No. 338—Decided May 17, 1965.)

*Mr. R. William Geyer* and *Messrs. Meyer, Johnson & Kincaid,* for appellant.

*Mr. Richard C. Kibler,* of *Kibler, Hervey & Kibler,* appointed by Common Pleas Court of Licking County for Receiver and under such authority acting as attorney for appellee Allen Willey.

RUTHERFORD, P. J.   This cause comes before this court for hearing *de novo* as an appeal on questions of law and fact from a judgment rendered for the defendants by the Common Pleas Court of Coshocton County.

It was stipulated by the parties that the case be submitted upon the transcript, the bill of exceptions, the lease and a plat as attached to the back of appellant's brief and marked Exhibit "B."

On April 27, 1934, Joseph Lake and Bertha Lake, his wife, predecessors in title to G. Ernest Lake, the plaintiff, appellant herein, executed and delivered to The Ohio Fuel Gas Company an oil and gas lease on 90.72 acres of real estate described, which lease was duly filed and recorded.  On December 18, 1942, The Ohio Fuel Gas Company made a written assignment of the lease to Allen Willey, a defendant and an appellee herein.  The interest of the defendant The First National Bank of Dover arises from an assignment of the lease to that bank by Allen Willey as security for a loan.  Julius F. Lenz, who had been appointed as receiver for Allen Willey, was made a party defendant after the suit was commenced.

Pertinent parts of the lease entered into provide:

"That the said lessor, in consideration of the sum of one dollar, the receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained, does hereby grant unto the lessee all of the oil and gas and all of the constituents of either, in and under the lands hereinafter described, together with the exclusive right to drill for, produce and market oil and gas and their constituents and also the right to enter thereon at all times for the purpose of drilling and operating for oil, gas and water and to possess, use and occupy so much of said premises as is necessary and convenient in removing the above named products therefrom, by pipelines or otherwise for a period of ten (10) years and so much longer thereafter as oil, gas or their constituents are produced in paying quantities, thereon, * * *.

"Provided, however, that if at the termination of said term, either primary or extended, there is a well in process of being drilled on said lands, then this lease shall continue in force so long as the drilling of such well is continued with reasonable diligence and so much longer thereafter as oil or gas or their constituents are found on said premises *in paying quantities in the judgment of the lessee.*

"Lessee to deliver to the lessor in tanks or pipe lines one-eighth (1/8) of the oil produced and saved from the premises and to pay from the product of each gas well from the time and while gas is marketed an annual rental of two hundred dollars.

"Lessee to drill a well producing oil or gas in paying quantity on said premises within three months from this date or to pay the lessor twenty-three and no/100 dollars each three months thereafter until such well is drilled or this lease surrendered. * * * If all wells drilled under this agreement shall become exhausted and abandoned, then lessee shall resume payments of the land rentals provided for herein and continue the same until a well producing oil or gas in paying quantities shall be drilled or this lease surrendered as provided herein.

"It is agreed that the acreage rentals, or royalties on any well, or wells paid and to be paid, as herein provided, are and will be accepted by the lessor as adequate and full consideration to render it optional with lessee as to whether or not it shall drill a well or wells *to offset producing wells on adjoining or adjacent premises.*

"Lessee shall have the right to surrender this lease or any portion thereof by written notice to lessor describing the portion of the above tract that it elects to surrender or by returning to the lessor the lease with the endorsment of surrender thereon or recording the surrender of this lease on the margin of the record thereof, either of which shall be a full and legal surrender of this lease to all of said tract or such portion thereof as said surrender shall indicate and a cancellation of all liabilities under same of each and all parties hereto, to the extent indicated on said surrender, and the acreage rental hereinbefore set forth shall be reduced in proportion to the acreage surrendered.

"All covenants and conditions between the parties hereto shall extend to their heirs, executors, successors and assigns." (Emphasis added.)

The premises consist of two parcels which are adjoining. One parcel contains 31.25 acres, and the other 59.47 acres. The smaller parcel lies north of the large one. Twenty-two years ago a well was drilled on the north part of the north parcel.

The defendant Mr. Willey admitted that no other wells have been drilled on the premises, and he testified further as follows:

"Q. Do you believe that the one well you have on the Lake farm will drain the whole farm? A. The well? I don't know.

"Q. Do you believe it will in your opinion? A. No.

"Q. In your opinion do you think another well should be drilled on the Lake farm? A. Well, I have been willing to speculate on drilling another well, which I admitted that. We wouldn't know until after we drilled.

"Q. But you think another well should be drilled. You think there is reason to drill? A. Yes, I was going ahead and drill another well."

Mr. Willey, however, made no attempt to drill another well prior to commencement of this lawsuit, and he had not done so since the first well was drilled 22 years ago. His assets are now under receivership. The receiver could drill only by obtaining prior court approval, and his testimony was that he cannot drill.

The well which was drilled is classified as "commercial," meaning that it is a marginal well profit-wise. The average

production has been about 700 barrels or $2,000 per year, of which plaintiff has received one-eighth. It is our finding, however, that this well is producing in paying quantities, and especially is this true since the lease reads, "in paying quantities in the judgment of the lessee," and he has continued to operate the well and pay royalties as specified in the lease.

Other producing wells have been drilled in the vicinity. Two of them are east of the 59.47 acre tract, each at a distance of 700 to 800 feet. No other wells have been drilled either south or west of the tract. It is a matter of opinion as to whether the two wells to the east on the Graham lands are pulling any oil from under the property of plaintiff.

Many cases have been cited by the attorneys as being controlling in the instant case, but as stated by the Supreme Court of Ohio in the case of *Harris* v. *Ohio Oil Co.*, 57 Ohio St. 118, at page 129 of the opinion:

"The rights and remedies of the parties to an oil or gas lease, must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms, must govern the rights and remedies of the parties."

The *Harris case* can immediately be distinguished from the instant case, for in that case the Supreme Court said, at page 131:

"The lease in question provides for a forfeiture for the failure to comply with the conditions * * *; but the implied covenant, to reasonably operate the premises, is not mentioned in the lease, and is therefore not included in the causes of forfeiture. Some causes of forfeiture being expressly mentioned, none other can be implied. * * *"

*Because of the express provision of foreiture contained in the lease* the court then went on to say:

"The remedy for a breach of the implied covenant to reasonably operate the premises, is *therefore* not by way of a forfeiture of the lease in whole or in part, but must be sought in a proper action for a breach of such covenant. * * *" (Emphasis added.)

In the instant case, the lease contained no forfeiture clause;

therefore, we have no express clause to negative that which may be implied.

The *Harris case,* however, as set forth in the first paragraph of the syllabus, does hold that in a lease which is silent as to the drilling of other wells, or the protection of lines, there is an implied covenant on the part of the lessee that he will drill and operate such number of oil wells on the lands as would be ordinarily required for the production of oil contained in such lands, and afford ordinary protection to the lines.

It should be noted that there are two categories—one entailing the drilling of sufficient wells as would be required for the production of the oil contained in the lands, and the other to afford ordinary protection to the lines. Wells drilled as required for production may be located without reference either to the perimeter of the property or to wells drilled on adjoining properties. They are to be distinguished from offset wells which must be drilled sufficiently close to the perimeter to protect the lines against drainage by other wells located nearby on adjoining properties

In the instant lease there is an express clause giving the lessee an option as to the drilling of offset wells, but no express clause giving the lessee a like option or to negative an implied covenant that the lessee shall drill and operate such number of wells on the lands as would ordinarily be required for production of oil contained therein.

Because of the express provision giving the lessee the option as to drilling offset wells for protection of the lines, we need not be concerned in this case with wells drilled on adjoining properties, but are left with the problems of production as they relate to producing the land described in the lease without reference to whether there are wells on other lands.

Under the law of Ohio, in the absence of conflict with an express covenant in the lease, a court of equity may decree the cancellation of the lease as to the undrilled portion of the leased premises in lieu of specific performance. See *Coffinberry* v. *Ohio Co.,* 68 Ohio St. 488.

For a case analogous to the instant case see *Sauder, Admx.,* v. *Mid-Continent Petroleum Corp.,* 292 U. S. 272, 78 L. Ed. 1255, 54 S. Ct. 671, 93 A. L. R. 454, wherein The Supreme Court of the United States in the opinion said:

" 'The object of the operations being to obtain a benefit or

profit for both lessor and lessee, it seems obvious, *in the absence of some stipulation to that effect,* that neither is made the arbiter of the extent to which or the diligence with which the operations shall proceed, and that both are bound by the standard of what is reasonable.' '' (Emphasis added.)

In that case, the United States Supreme Court held that under a lease covering nine-sixteenths of a section and running for ten years and thereafter as long as oil or gas could be produced in paying quantities, failure, for seventeen years, to explore and develop eight-sixteenths of the section was a breach of implied covenant of diligent development, entitling lessors to cancellation as to eight-sixteenths, though two offsetting wells existed on the remaining one-sixteenth section and geological information allegedly indicated eight-sixteenths could not be developed profitably. In paragraph two of the S. Ct. headnotes it is held:

"Where oil and gas lessee failed, for seventeen years, to explore and develop major portion of leased premises, lessors *held* entitled to relief in equity for cancellation of lease as to undeveloped portion, since they had no adequate remedy at law."

We recognize that there are Ohio cases holding that acceptance of general rentals for property waives the right to claim cancellation of the contract under which they are paid, but in the instant case the money paid represented royalties as distinguished from general rentals, and it is our finding that the lessor, by accepting payment for oil actually removed from a portion of his premises, waives his right to seek cancellation of that portion from which the oil paid for was removed, but not his right to seek cancellation of the lease as to another part of the premises, if as to such other part there has been a breach by the lessee of an implied covenant of development.

If this action had commenced solely to quiet title it may have been prematurely brought before the plaintiff was in actual or constructive possession, but it was properly brought as an action for cancellation and forfeiture of the lease.

The lease also provided for its surrender as to a portion of the premises at the option of the lessee, therefore the parties recognize its possible divisibility. The lease contains no express covenant rendering it indivisible.

Upon the evidence and in consideration of the equities of

the parties, it is our judgment that a decree be entered cancelling the lease as to the south one-half of the premises described therein unless within one year from the date the journal entry is filed an exploratory well is drilled in such south one-half to the depth of the sand stratum from which oil is obtained by the well on the north one-half, and that the north one-half of the premises described should remain under the lease. Cancellation of the lease as to the south one-half of the premises being contingent upon whether a well is drilled within the time specified, title cannot be quieted at the present time.

*Judgment accordingly.*

McLAUGHLIN and VAN NOSTRAN, JJ., concur.