[Cite as *Core v. Samurai Corp.*, 2015-Ohio-5437.]

STATE OF OHIO, HARRISON COUNTY
IN THE COURT OF APPEALS
SEVENTH DISTRICT

DOUGLAS L. CORE, et al.　　　　　　)　　CASE NO. 13 HA 13
　　　　　　　　　　　　　　　　　　　　)
　　　　PLAINTIFFS-APPELLANTS　　　)
　　　　　　　　　　　　　　　　　　　　)
VS.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
SAMURAI CORP.　　　　　　　　　　　)　　OPINION
　　　　　　　　　　　　　　　　　　　　)
　　　　DEFENDANT-APPELLANT　　　　)
　　　　　　　　　　　　　　　　　　　　)
AND　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
WALTER E. MADER, et al.　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　DEFENDANTS-APPELLEES　　　)

CHARACTER OF PROCEEDINGS:　　　Civil Appeal from the Court of Common
　　　　　　　　　　　　　　　　　　　　　Pleas of Harrison County, Ohio
　　　　　　　　　　　　　　　　　　　　　Case No. CVH-2010-0152

JUDGMENT:　　　　　　　　　　　　　　Affirmed in part. Reversed in part.
　　　　　　　　　　　　　　　　　　　　　Remanded.

APPEARANCES:
For Attorneys for Plaintiffs-Appellants　　Atty. Steven J. Schrock
Douglas & Joyce Core and　　　　　　　Atty. Clint M. Leibolt
James Humphrey:　　　　　　　　　　　Critchfield, Critchfield & Johnston, Ltd.
　　　　　　　　　　　　　　　　　　　　　138 E. Jackson St.
　　　　　　　　　　　　　　　　　　　　　Millersburg, Ohio　44654

For Attorney for Defendant-Appellant　　Atty. Victor D. Radel
Samurai Corp.:　　　　　　　　　　　　　Yarger Radel & Pentz, LLC
　　　　　　　　　　　　　　　　　　　　　1111 Superior Ave., #530
　　　　　　　　　　　　　　　　　　　　　Cleveland, Ohio　44113

For Attorney for Defendants-Appellees　Atty. Lawrence T. Piergallini
Walter Mader, Marie E. Mader,　　　　　131 Third Street
Paul Mader, and Linda Mader:　　　　　P.O. Box 7
　　　　　　　　　　　　　　　　　　　　　Tiltonsville, Ohio　43963

JUDGES:
Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Carol Ann Robb　　　　　　　　　　Dated:　December 18, 2015

WAITE, J.

{¶1} In this action involving an oil and gas lease, Appellants, Douglas L. Core, Joyce Core and James Humphrey (collectively, "Core") and Samurai Corporation ("Samurai") appeal the August 20, 2013 Harrison County Common Pleas Court's decision granting summary judgment in favor of Appellees Walter Mader, Marie Mader, Paul Mader and Linda Mader (collectively, "Appellees"). Appellants also appeal a November 20, 2013 judgment entry which awarded Appellees the equitable remedy of forfeiture. Appellants argue that the trial court improperly found that the lease contained an implied covenant of development.

{¶2} Appellants also contend that even if the lease does contain the implied covenant, Appellees failed to present any evidence to show that this covenant was breached. Regardless, Appellants argue that forfeiture was improper, as Appellees failed to produce any evidence to demonstrate that monetary damages are inadequate. For the following reasons, all of Appellants' arguments regarding the implied covenant are without merit and the judgment of the trial court is affirmed as to those issues. However, we reverse and remand to the trial court for purposes of trial on the issue of damages.

Factual and Procedural History

{¶3} On May 7, 1979, Appellees entered into an oil and gas lease with Universal Minerals, Inc. which gave Universal the right to drill on approximately 515 acres of their property. After a series of assignments, Core obtained the right to drill on Appellees' land and later assigned that right to Samurai. Within the assignment from Core to Samurai, Core retained a reversionary right in the lease that would

revert the lease back to Core if Samurai failed to abide by a set drilling schedule. On August 21, 1980, a producing well was drilled on Appellees' property which continues to produce today. However, no drilling activity has taken place on the remaining 414 acres of Appellees' property.

**{¶4}** On June 28, 2010, Appellees mailed Samurai a demand letter stating that if Samurai did not commit to drilling the remaining property, action would be taken to proclaim the undrilled property forfeited. Samurai responded to the letter on July 2, 2010 stating that they considered the land to be held by the existing production and they would not forfeit their rights. Samurai did not specifically refuse to drill in their response letter, but failed to drill additional wells after responding to Appellees' demand letter.

**{¶5}** In December of 2010, Core filed a complaint against Samurai and Appellees. Against Samurai, the complaint alleged: two counts of breach of contract, unjust enrichment and breach of a fiduciary duty. The complaint sought declaratory and injunctive relief in relation to the reversionary right within their contract. Against Appellees, the complaint requested declaratory judgment regarding the parties' rights to the leased property. In January of 2011, Samurai filed its own complaint against Core asserting intentional interference with a prospective business advantage. However, Samurai dismissed this complaint in May of 2011. In March of 2011, Appellees filed a counterclaim against Core and a cross-claim against Samurai seeking a declaratory judgment from the trial court that the lease at issue was void due to a breach of the implied covenant of development.

**{¶6}** In January and March of 2011, all parties filed partial motions for summary judgment as to the declaratory judgment issue. Appellees' motion asserted that Appellants failed to develop the remaining 415 acres of the property, which resulted in a breach of the implied covenant of development. Appellees conceded that the 100 acres of land that was developed could not be forfeited, but argued that the remaining 415 acres of undeveloped land should be forfeited.

**{¶7}** In August of 2013, the trial court found the existence of an implied covenant of development within the lease and granted Appellees' motion for partial summary judgment. The court concluded that damages could not be determined and ordered a hearing. Appellants objected to the hearing claiming that Appellees had failed to present evidence of damages within their summary judgment motion and should not have the benefit of a second attempt. While a hearing was held, its objective was not entirely clear. Following hearing, the trial court denied Core and Samurai's respective motions for summary judgment because their issues were moot and granted forfeiture to Appellees. This timely appeal followed.

## Summary Judgment

**{¶8}** An appellate court conducts a *de novo* review of a trial court's summary judgment decision. *Bentley v. Beck Energy,* 7th Dist. Nos. 13 BE 33, 13 BE 34, 2015-Ohio-1375, ¶12, citing *Campbell Oil Co. v. Shepperson*, 7th Dist. No. 05 CA 817, 2006-Ohio-1763, ¶8. Viewing the facts in a light most favorable to the non-moving party, the trial court must find that: (1) there is no genuine issue of material fact remaining for litigation, (2) the moving party is entitled to judgment as a matter of

law, and (3) that reasonable minds can come to only one conclusion, which is adverse to the non-moving party. *Campbell Oil Co.* at ¶8, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶9}** The moving party bears the initial burden "of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment." *Dresher v. Burt,* 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). The burden then shifts to the non-moving party, who in return must set forth specific facts showing that a genuine issue of fact exists and that a reasonable factfinder could rule in that party's favor. *Campbell Oil Co.* at ¶9, citing *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (1997).

**{¶10}** As co-Appellants Core and Samurai have presented identical arguments in their separate briefs, their corresponding assignments of error will be discussed together.

<u>CORE'S FIRST ASSIGNMENT OF ERROR</u>

THE TRIAL COURT ERRED BY HOLDING THAT THE MADER LEASE CONTAINS AN IMPLIED COVENANT TO DEVELOP, AND THUS DENYING APPELLANTS [SIC] SUMMARY JUDGMENT ON MADERS' COUNTERCLAIM.

<u>SAMURAI'S SECOND ASSIGNMENT OF ERROR</u>

THE TRIAL COURT ERRED BY HOLDING THAT THE MADER LEASE CONTAINS AN IMPLIED COVENANT TO DEVELOP.

**{¶11}** Appellants contend that the trial court erred in finding the existence of an implied covenant to develop within the Mader lease. Under Ohio law, Appellants assert that a court cannot find the existence of an implied covenant to develop when the lease is not silent as to development. Appellants argue that paragraphs seven (a unitization clause) and eight (an offsetting wells clause) of the Mader lease address the development of the leasehold. As such, Appellants contend that the lease is not silent regarding development of the leasehold and the trial court erred in finding an implied covenant existed.

**{¶12}** In response, Appellees contend that neither paragraph seven nor paragraph eight address the development of the leasehold. Appellees explain that paragraph seven discusses Appellants' obligations if the leased property is consolidated into a developmental unit, which did not happen in this case. Similarly, Appellees assert that paragraph eight addresses offsetting wells, which, again, is not applicable in this case. As neither contains express contractual language that negates an implied covenant to develop, Appellees argue that the trial court correctly found the existence of such an implied covenant.

**{¶13}** The Ohio Supreme Court has held "that absent express provisions to the contrary, a mineral lease includes an implied covenant to reasonably develop the land." *Ionno v. Glen-Gery Corp.,* 2 Ohio St.3d 131, 132, 443 N.E.2d 504 (1983), citing *Beer v. Griffith*, 61 Ohio St.2d 119, 399 N.E.2d 1227 (1980), paragraph two of

the syllabus. Accordingly, "where a lease fails to contain any specific reference to the timeliness of development, the law will infer a duty to operate with reasonable diligence." *Ionno* at 133.

**{¶14}** There is no question that the Mader lease does not contain an express waiver of implied covenants. However, Appellees contend that paragraphs seven and eight each address development of the lease, thus the lease is not silent as to that issue. As each lease paragraph addresses a different concept, each paragraph will be discussed separately. For ease of understanding, we begin our analysis with paragraph eight.

*Paragraph Eight: Offsetting Wells*

**{¶15}** Paragraph eight states in full: "It is agreed that the acreage rentals or royalties on any well, or wells, paid and to be paid as herein provided are and will be accepted by Lessor as adequate and full consideration to render it optional with Lessee as to whether or not it shall drill a well or wells to offset producing wells on adjoining or adjacent properties." (Mader Lease, ¶8).

**{¶16}** Appellants interpret this provision to suggest that Appellees agreed to accept the acreage rentals or royalties as adequate and full consideration for Appellees' reservation of the right to determine how many offset wells would be drilled on the leased property. Hence, Appellants believe this provision addresses general development of the leasehold and that the paragraph acts as an express disclaimer of the implied covenant of development. Appellees, however, interpret this clause to give Appellants discretion as to how many wells must be drilled to offset

producing wells on adjacent or adjoining properties. Appellees argue that this provision only applies when a specific event takes place; introduction of producing wells on adjacent property. In this case, that event did not occur. Thus, Appellees urge that the provision clearly does not address development of the leasehold in general.

{¶17} At least one Ohio appellate court has already confronted this issue. The Fifth District determined that a lease containing a provision that has language identical to paragraph eight of the instant lease did not amount to an express waiver of the implied covenant of development. *Lake v. Ohio Fuel Gas Co.,* 2 Ohio App.2d 227, 231-232, 207 N.E.2d 659 (5th Dist.1965). The Court noted that while the provision addressed offset wells, this language did not give the lessee discretion to determine the number of wells to be drilled for production purposes on the leasehold in general. The sole purpose of the provision was to address offset of a producing well on adjacent property. The provision, then, could only be triggered by the introduction of a producing well on an adjacent parcel of property, not by any action on the leasehold, itself. *Id.* at 232. Consequently, the court overruled the appellant's argument that the provision amounted to an express waiver of the implied covenant of development, which is the identical argument advanced by Appellants in the instant case.

{¶18} We begin our discussion by noting that production wells are different than offset wells. Offset wells protect the leasehold's lines against drainage from wells on adjoining properties, whereas producing wells actually produce oil and gas

from underneath the land. Thus the wells serve different purposes. *Id.* A paragraph that purely addresses offset wells, without more, as paragraph eight does, has no relevance to production wells. Consequently, paragraph eight's grant of discretion as to how many offset wells are drilled does not provide discretion to Appellants as regards the number of production wells to be drilled. We agree with the Fifth District's determination in *Lake.* Paragraph eight cannot be construed as an express disclaimer of the implied covenant of development.

*Paragraph Seven: Unitization Clause*

{¶19} Paragraph seven, the unitization clause, expressly provides "* * * the Lessee shall in no event be required to drill more than one well on such unit." (Mader Lease, ¶7.)

{¶20} Appellees assert that paragraph seven provides a disclaimer of an implied covenant to develop the leasehold. This ignores the meaning of the provision when read in its entirety. Paragraph seven of the Mader lease reads, in relevant part:

> The Lessor hereby grants to the Lessee, the right to consolidate the leased premises, or any part thereof, with other lands to form an oil and gas development unit of not more than six hundred forty (640) acres for purpose of drilling a well thereon, but the Lessee shall in no event be required to drill more than one well on such unit.

The remainder of the paragraph details the ability of lessors to use produced gas in the event that a development until is created.

**{¶21}** Unlike paragraph eight, there appears to be no prior case relevant to the language found in this provision. It is apparent, however, that similarly to the language of paragraph eight, paragraph seven addresses a specific scenario that has not occurred in this case. Paragraph seven grants Appellants the right to consolidate the leased premises with other lands and form development units. In the event that Appellants elect to exercise this right, they are only required to drill one well per such unit.

**{¶22}** Here, the leased premises were not consolidated. Thus, this provision has never become relevant in regard to this leasehold. Even so, paragraph seven is limited to consolidation of property which, again, has no bearing on the number of wells drilled for development purposes. Because neither of these lease provisions serve as a waiver of the implied duty to develop, the trial court correctly determined that this lease is subject to the implied covenant. Accordingly, Appellants' assignments of error in this regard are without merit and are overruled.

CORE'S SECOND ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY HOLDING THAT MADERS WERE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIM THAT APPELLANTS BREACHED THE IMPLIED COVENANT TO DEVELOP, AND BY DENYING APPELLANTS SUMMARY JUDGMENT ON SAID CLAIM.

SAMURAI'S THIRD ASSIGNMENT OF ERROR

THE TRIAL COURT ERRRED [SIC] BY GRANTING SUMMARY JUDGMENT IN FAVOR OF THE MADERS ON THEIR CLAIM THAT THE IMPLIED COVENANT TO DEVELOP HAD BEEN BREACHED

**{¶23}** Appellants argue that even if we assume that an implied covenant to develop exists in this lease, Appellees carried the burden of proving they breached the covenant. Appellants argue that Appellees failed to produce any evidence to suggest that the undeveloped area of the property had potential for development, so they failed to prove that development of the remaining acreage was reasonable. Samurai also emphasizes that the implied covenant of development requires "prudent production of oil and gas" to ensure that the lessor receives the benefit and purpose of the lease: royalty payments. As Appellees have admittedly received royalty payments for the developed portion of the leased premises, Samurai argues that Appellees have been receiving the benefit of the lease and are estopped as a matter of law from asserting a breach.

**{¶24}** In response, Appellees argue that Appellants have developed only 110 of the 514 acres of the leased property. As Core and Samurai have failed to make any efforts over the last thirty years to develop the remaining 414 acres, Appellees assert that the implied covenant of development has been breached as to the undeveloped acreage.

**{¶25}** Before we can determine the validity of the parties' arguments, we must first examine the evidence presented to the trial court in the summary judgment. Civ.R. 56(C) states in relevant part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.

{¶26} Appellees presented a June 28, 2010 demand letter they sent to Samurai and a July 2, 2010 response letter sent by Samurai to Appellees. In the demand letter Appellees assert that Samurai failed to fulfill its obligations to drill and produce oil from the property as required by the lease. The letter sought either a commitment to further drill or forfeiture of the undeveloped property within ten days. Samurai responded in a letter stating that the land is held by continuous production and that as all obligations have been fulfilled, Samurai would not forfeit its rights to the property. The letter is signed by Sam Skipper, president of Samurai.

{¶27} Appellants urge that the letters were not properly before the trial court as they were attached to Appellees' post-damages hearing motion, which occurred after the trial court's initial summary judgment decision. While this appears to be technically true, it is apparent that the substance of both letters were properly of record and before the trial court prior to the court's final ruling.

{¶28} The record demonstrates that Appellants attached Sam Skipper's deposition to their motion for summary judgment, filed prior to Appellees' own motion

for summary judgment. In the deposition, Mr. Skipper was asked a series of questions about "exhibit nine," which was the demand letter. Even if Appellees did not provide a copy of this demand letter to the trial court before the court's initial ruling on Appellees' partial motion for summary judgment, because this letter had an exhibit number and was discussed within a deposition, its contents were properly presented to the trial court in summary judgment. We also note, as Appellants raised at the damages hearing, the trial court's ruling on the partial motion for summary judgment was not final at the time it received the memorandum on damages. These documents were properly produced to the court prior to final decision on the matter.

{¶29} More importantly, Appellants concede that approximately 415 acres of Appellees' property have not been developed over the course of more than thirty years. A review of the record shows that the Mader lease was signed on May 7, 1979. Sam Skipper stated in his deposition that only one well has been drilled on the Mader property in all that time, and that well was completed on August 21, 1980. Mr. Skipper acknowledged in his deposition that the completed well covered approximately 109 acres and that the remaining 415 acres remained undeveloped. Appellees rely on this admission to prove that breach occurred. Thus, we turn to the question whether evidence that substantial portions of a leased premises have remained undrilled is sufficient to prove a breach of the implied covenant of development.

{¶30} According to the Ohio Supreme Court, an implied covenant of development requires a lessee "to reasonably develop the lands by drilling and

operating such number of wells as would be ordinarily required for the production of the oil contained in such lands, and afford ordinary protection to the lines." *Harris v. Ohio Oil Co.,* 57 Ohio St. 118, 127, 48 N.E. 502 (1897). The sole purpose of the covenant is to ensure development of leased land. *Anderson v. Chief Drilling, Inc.,* 5th Dist. No. 82-CA-15, 1983 WL 6351, *3 (Jan. 14, 1983).

**{¶31}** We begin our analysis with a discussion of *Lake*, *supra*, where the Fifth District held that an oil and gas company's failure to develop approximately one-half of a leased premises over the course of approximately twenty-two years amounted to a breach of the implied covenant of development. *Id.* at 234. The Court cited to caselaw from the United States Supreme Court holding that an oil and gas company's failure to develop "eight-sixteenths" of a leased premises over a course of seventeen years amounted to a breach. *Id.* at 233, citing *Sauder, Admx. v. Mid-Continent Petroleum Corp.,* 292 U.S. 272, 54 S.Ct. 671, 78 L.Ed. 1255 (1934).

**{¶32}** Because the United States Supreme Court holds that failure to develop one-half of a leased property over the course of seventeen years in *Sauder*, and our sister district has determined that failure to develop one-half of a leasehold over the course of twenty-two years amounts to a breach of the implied covenant of development, it is readily apparent that the admitted failure to develop four-fifths of a leasehold over more than thirty years in this case is also a breach.

**{¶33}** As regards Appellants' theory that Appellees' acceptance of royalties from the developed property estops them from asserting breach, this argument is contrary to Ohio law. According to *Lake,* a lessor does waive his right to cancel the

portion of the lease from which oil was produced by accepting payment for the produced oil. However, acceptance of such royalties does not affect the "right to seek cancellation of the lease as to another part of the premises, if as to such other part there has been a breach by the lessee of an implied covenant of development." *Lake, supra,* at 233 (emphasis deleted). Appellees have not waived their right to cancel the lease as regards the undeveloped portion of their land merely because they accepted royalties from the developed portion of the land.

**{¶34}** Accordingly, Appellant Core's second and Appellant Samurai's third assignments of error are also without merit and are overruled.

<u>CORE'S THIRD ASSIGNMENT OF ERROR</u>

THE TRIAL COURT ERRED BY HOLDING THAT MADERS PROVED THAT DAMAGES WERE AN INADEQUATE REMEDY FOR BREACH OF THE IMPLIED COVENANT TO DEVELOP AND ORDERING A PARTIAL FORFEITURE OF THE MADER LEASE.

<u>SAMURAI'S FIRST ASSIGNMENT OF ERROR</u>

THE TRIAL COURT ERRED BY ORDERING THE REMEDY OF FORFEITURE OF THE MADER LEASE BECAUSE THE MADERS FAILED TO OFFER ANY EVIDENCE IN SUPPORT OF THEIR CLAIM.

**{¶35}** In their final assignment, Appellants argue that even if we find that an implied covenant to develop the property exists, and that this covenant was breached, forfeiture was not the appropriate remedy. Appellants contend that Appellees failed to present any evidence as to damages, so that summary judgment

to Appellees could not be granted in this case. They assert that Appellees did not provide any damage evidence in their motion for partial summary judgment. Appellants also argue that the trial court held a hearing on damages to allow Appellees an additional opportunity to present evidence regarding damages. Despite this second opportunity, Appellees again failed to present any evidence of damages.

{¶36} Appellants also contend that the mere fact that damages may be difficult to measure does not mean that damages are inadequate and the contract must be forfeited. In support of their argument, Appellants cite to *Beer, supra* and *Ionno, supra,* which collectively held that the lessor bears the burden of proving damages are inadequate. As Appellees' sole argument at the hearing was that damages would be too difficult to measure, Core and Samurai contend that Appellees failed to meet their burden and the trial court erred in awarding partial forfeiture.

{¶37} Appellees also cite to *Beer, supra,* and *Moore v. Adams,* 5th Dist. No. 2007AP090066, 2008-Ohio-5953, both of which hold that forfeiture of a lease is proper when the implied covenant of development is breached. In response to Appellants' argument regarding the burden of proving damages, Appellees contend that any attempt at proving damages for the failure to drill over the course of more than thirty years would be speculative.

{¶38} In Ohio, "[w]here certain causes of forfeiture are specified in an oil and gas lease, others cannot be implied. Under such a lease, the remedy for a breach of an implied covenant, without more, is damages, and not forfeiture of the lease, in

whole or in part." *Ionno, supra,* at 134-135, quoting *Harris, supra,* paragraph two and three of the syllabus. However, "where legal remedies are inadequate, forfeiture or cancellation of an oil and gas lease, in whole or in part, is an appropriate remedy for a lessee's violation of an implied covenant." *Ionno, supra,* at 135, quoting *Harris, supra,* at paragraph four of the syllabus.

{¶39} The record before us reveals great confusion about the aim of the "damages" hearing set by the trial court. While the court granted Appellees' partial motion for summary judgment, declaring breach, the court did not address any remedy. Instead, the court set the matter for "hearing." The record shows that the hearing appears to have been set as an oral extension of the competing motions for summary judgment filed by all parties. While the trial court expressly referred to the hearing as a damages hearing within its entry, the court did not mention that evidence would be taken nor give any other indication that the hearing was for evidentiary purposes. The judgment entry setting the hearing did state that "[u]pon conclusion of hearing, if the Court finds damages are an inadequate remedy, the court will consider if forfeiture of the lease is appropriate." (8/20/13 J.E., p. 10.) Because this language appears to imply that further consideration would become necessary, this did not aid in comprehension as to the actual goal of the hearing. We note that at the hearing Appellees attempted to introduce an affidavit of an expert in regard to damages, but were refused by the court on objection. This also does not aid in determining the true intent of the hearing. While an affidavit is not acceptable evidence at an evidentiary hearing in most instances, it is also readily apparent that

the time had long passed for submitting new evidence in aid of summary judgment, and the court could have ruled against this affidavit for this reason, as well.

**{¶40}** Appellants assert that the damages hearing was improper as it gave Appellees a second opportunity to produce the evidence that they failed to include in their motion. Appellants also argue that despite this second opportunity, Appellees have wholly failed to present any evidence that they were damaged by the alleged breach. However, in explaining its decision to hold a damages hearing, the trial court described the hearing as "a necessary extension of the summary judgment ruling." (10/9/13 Damages Hrg., p. 16.) This record appears to reflect that the judge recognized that implied covenant issues were threshold issues that needed to be determined before damages could be addressed. Hence, the court granted partial summary judgment on this threshold issue. Pursuant to *Harris* and *Lake,* the court was also aware that the adequacy of damages must be addressed before a court can award forfeiture. It appears the court deemed it prudent to allow the parties to present arguments as to both the adequacy of damages and the appropriateness of forfeiture. Based on this rationale, the trial court's decision to hold oral argument was proper. Despite the fact that the trial court, during the hearing, may have intended the parties to introduce evidence as to damages, this purpose was not apparent when the hearing was set. It was reasonable for Appellees to believe its purpose was, in fact, oral argument intended to aid summary judgment in an "extension" of summary judgment. However, Appellants are partially correct that the record does not reveal actual evidence of either damages, or in the alternative, evidence that

damages were incalculable and thus, inadequate. Appellants argue that no breach occurred, but that even if they breached, Appellees were not damaged. Appellees, because of the confused purpose for the hearing, never got a chance to offer evidence, but contend that any damage award must be inadequate, given the length of time Appellants have been in breach. Clearly, then, material disputes of fact exist precluding summary judgment on the issue of damages.

{¶41} Accordingly, we reverse and remand the matter of damages to the trial court for purposes of trial on the merits of damages to determine whether damages are inadequate, and if so, whether forfeiture is proper.

## Conclusion

{¶42} As the lease contains no express disclaimer, the parties' lease contains an implied covenant of development pursuant to *Beer* and *Ionno.* Appellees produced evidence proving a breach of this covenant, and Appellants have conceded that they failed to develop four-fifths of the leased property over the course of more than thirty years. A material question of fact still exists as to damages. Accordingly, we reverse and remand for trial on the merits to determine damages and, if inadequate, whether forfeiture is proper.

Donofrio, P.J., concurs.

Robb, J., concurs.