[Cite as *Pavsek v. Wade*, 2019-Ohio-5250.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MONROE COUNTY

THOMAS J. PAVSEK,

Plaintiff-Appellant,

v.

WILL WADE,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 18 MO 0024

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2016-157

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. David J. Wigham, Atty. Leighann K. Fink, Atty. John W. Breig, Jr.,* Roetzel & Andress, LPA, 222 South Main Street, Akron, Ohio 44308 for Plaintiff-Appellant and

*Atty. Daniel P. Corcoran, Atty. Kristopher O. Justice, Atty. Adam J. Schwendeman, Theisen Brock,* 424 Second Street, Marietta, Ohio 45750, for Defendant-Appellee.

Dated: December 9, 2019

---

**Robb, J.**

{¶1}   Plaintiff-Appellant Thomas Pavsek (the lessor) appeals the decision of the Monroe County Common Pleas Court granting summary judgment to Defendant-Appellee Will Wade (the lessee).  Appellant argues the trial court erred in ruling that the lessor must give notice with a demand for additional drilling in order to assert forfeiture of undeveloped acreage for breach of the implied covenant to reasonably develop applicable to the parties' oil and gas lease.  If so, then Appellant contends the evidence showed a breach of the implied covenant and the propriety of lease forfeiture as a remedy.  For the following reasons, we uphold the trial court's decision that notice with a demand for additional drilling was required, find any conditional issues moot, and affirm the trial court's judgment.

Statement of the Case

{¶2}   Appellant Thomas Pavsek owns fifty acres in Monroe County, which he purchased in 1996.  His predecessor executed an oil and gas lease in 1928 for two years "and as much longer as oil or gas is found in paying quantities thereon * * *."  One well was drilled during the primary term and is still producing.  In 1974, the original lessee assigned the lease to Appellee Will Wade (and two other Wades, who assigned their interests to Appellee in 1990).  In May 2016, Appellant filed a complaint against Appellee seeking quiet title and a declaratory judgment that the lease terminated and was forfeited due to breach of the implied covenant to reasonably develop (and other covenants no longer at issue, such as paying quantities as to the existing well).  Appellee filed an answer and a counterclaim asking for a declaration that the lease remained in effect.

{¶3}   Appellant testified at deposition that he purchased the property in the 1990's for hunting and later built a cabin which receives free gas from the well (under the terms of the lease).  He believed there should be more wells on the leased premises, noting there were four wells on some other property with a forty-acre lease.  (Pavsek Depo. 41-42).  He was not familiar with Ohio spacing requirements or the geology of the area and had not retained an expert on the issue at that time.  (Pavsek Depo. 42-43).  He said a drilling company offered him a lease with a signing bonus of $9,000 per acre in 2004, but

he was busy, the market declined, and the offer was rescinded.  (Pavsek Depo. 21-22).  Appellant said he did not demand that Appellee develop additional wells or release the lease before filing the complaint.  (Pavsek Depo. 33, 54).  Appellee's affidavit confirmed the lack of a demand from Appellant for additional drilling.  (Wade Aff.)

{¶4}  Appellee testified at deposition that he owned 125 acres contiguous to the property on which the well was situated.  In addition to the well on Appellant's land, Appellee owned six other wells on leaseholds touching his property.  (Wade Depo. 187).  As to the land subject to the lease, he originally considered drilling another vertical well but believed those who were drilling in similar circumstances were not having success.  (Wade Depo. 185).  He said he could afford to drill another similar vertical well to reach shallow formations (due to his personal abilities), but he belived the existing development of the shallow formations on the leased premises was already profitable and the existing well sufficiently served the leased property due to the care he used to operate it.  (Wade Depo. 191-198).  He said he has maintained the well's production by not getting "hoggish" and ensuring the sand does not dry out.  (Wade. Depo. 191).

{¶5}  Appellee noted a state geologist told him this was a good area for this type of well and the wells he owned were some of the best for their age (from the 1920's).  (Wade Depo. 195).  He did not conduct testing of the geological formations and did not consult an expert besides the state geologist who was impressed with the current production from the old well.  (Wade Depo. 182, 196).  Appellee could not estimate the amount of oil or gas that could have been produced with another vertical well on the leased land but said there was not much drilling in the area from the time he bought the property until after new horizontal technology was introduced locally.  (Wade Depo. 182, 184, 195).  At that time, he sought to reach deeper formations through horizontal drilling, but Appellant would not sign the requested instruments; he also said Appellant has "always been hostile to drilling on" his land.  (Wade Depo. 176, 178-179, 184, 192).

{¶6}  A tax map was used by Appellant's counsel to attempt to elicit testimony from Appellee that the 50 acres subject to the lease was actually 42 acres separated from 8 acres by 33 acres not subject to the lease. The lease described the property in a manner suggesting the 50-acre leasehold was one contiguous plot of land, and Appellee's

testimony suggested he was unaware the 50 acres he leased was not contiguous. (Depo. 32, 156, 170-171, 203).[1]

{¶7} On August 17, 2018, Appellee filed a motion for summary judgment. Regarding the implied covenant of reasonable development, Appellee argued: Appellant's failure to provide notice demanding further development barred the claim for forfeiture; there was no evidence a reasonably prudent operator would have drilled an additional well; and Appellant was not entitled to forfeiture for breach of the implied covenant (as the express terms of the lease specified forfeiture for other reasons, such as failing to pay delay rentals, and damages were inadequate).

{¶8} On this same day, Appellant filed a motion to extend the case management schedule, expressing an intent to start looking for an expert. Appellee replied with a motion to maintain the case management schedule and to exclude expert testimony, citing to Appellant's discovery violations and the failure to disclose an expert before Appellee filed for summary judgment. On September 5, 2018, the trial court denied Appellant's motion to extend the case management schedule, noting the May 17, 2018 entry (which set the discovery due date for July 20, 2018) expressly said there would be no further extensions. (This is not challenged on appeal.)

{¶9} Appellant's September 7, 2018 opposition to summary judgment argued: notice with a demand was not a condition precedent to asserting forfeiture for breach of implied covenant, especially where a long period of time had passed; an expert was not required to show the covenant was breached; and forfeiture is an appropriate remedy (as the Supreme Court has permitted lease partial forfeiture for breach of an implied covenant and Appellee's deposition testimony suggested damages could not be reasonably calculated).

{¶10} Although the trial court denied the requested extension of the case management schedule, Appellant cited his expert's affidavit. (The affidavit is not attached to the memorandum opposing summary judgment but is attached to Appellant's September 7, 2018 response to a motion to exclude the expert opinion.) The expert

---

[1] The lease listed the properties bordering the leasehold on the north, east, south, and west. A 1920's tax map showed 42 acres and a non-contiguous 8 acres were owned by E.O. Curtis (who signed the 1928 lease with his wife Viola); the map showed 33 acres, owned by E.O and J.L. Curtis, between the two E.O. Curtis properties. This tax map was attached to the opposition to summary judgment but was not attested to by an affidavit. The affidavit of Appellee's untimely-disclosed expert included the tax map as a document he considered; it was provided to the expert by counsel.

stated: a permit for a new well (at the depth of the existing well) would require ten acres of land; with this spacing, four similar wells could have been drilled on the 42 acres; a reasonable producer who acquired the lease in 1974 (and lasting until 2010 when development of Utica shale started) would have tested or drilled a similar (or deeper) well on the 42 acres; and based on the recorded production from the existing well and the parcel separating the two parts of leased land, it was unlikely the existing well was producing from the 42 acres.

{¶11} On October 31, 2018, the trial court granted Appellee's summary judgment motion. After explaining why the well was producing in paying quantities (which is not challenged on appeal)[2], the court addressed the claim seeking (partial) lease forfeiture (as to the undeveloped acreage) due to breach of the implied covenant of reasonable development. The court said Ohio law provides a lessee a reasonable period of time to commence drilling operations after receiving notice from the lessor that he desires additional drilling, citing *Landers v. Ohio Oil Co.*, 24 Ohio N.P. (N.S.) 65 (1921). It was concluded that Appellant was not entitled to bring the action because this condition precedent was not satisfied.

{¶12} Alternatively, the court quoted law from this district stating: the lessee's duty to develop territory and drill additional wells was left to the lessee's good faith judgment; his judgment is properly influenced by financial interests; and it is largely a matter for expert testimony based on the surrounding conditions. *See Weisant v. Follett*, 17 Ohio App. 371 (7th Dist.1922). The trial court concluded there was no genuine issue of material fact and found Appellant was not entitled to lease forfeiture for breach of the implied covenant. Appellant filed a timely notice of appeal.

<u>General Law: Summary Judgment & Implied Covenant</u>

{¶13} We review the granting of summary judgment de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Summary judgment can be granted when no genuine issue of material fact remains and reasonable minds can only

---

[2] From 2001-2016, Appellee's revenues after paying the one-eighth royalty to Appellant were over $71,000 (with repairs in 2008 and 2015 resulting in no sales in those years.) Appellee used his own labor to maintain the well and had operating expenses averaging $500 per year. Appellant received royalty checks from an oil purchasing company.

conclude the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). The movant has the initial burden to show there is no genuine issue of material fact. *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996). The movant must inform the trial court of the basis for the motion and identify the portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-movant's claim. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher*, 75 Ohio St.3d at 293. If the initial burden is satisfied, then the non-moving party has a reciprocal burden. *Id.* The non-movant's response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing there is a genuine issue for trial; the non-movant may not rest upon mere allegations or denials in the pleadings. Civ.R. 56(E).

{¶14} Civ.R. 56 must be construed in a manner that balances the right of the non-movant to have a jury try claims adequately based in fact with the right of the movant to demonstrate before trial that the claims and defenses have no discernible factual basis. *Byrd*, 110 Ohio St.3d 24 at ¶ 11, citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court is to consider the evidence and reasonable inferences in the light most favorable to the non-movant. *See, e.g., Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 11. The material issues of each case depend on the arguments specified and the substantive law applicable to the case. *See Byrd*, 110 Ohio St.3d 24 at ¶ 12.

{¶15} Unless a mineral lease contains an express provision to the contrary, it includes an implied covenant to reasonably develop the land. *Ionno v. Glen-Gery Corp.*, 2 Ohio St.3d 131, 132, 443 N.E.2d 504 (1983), citing, e.g., *Beer v. Griffith*, 61 Ohio St.2d 119, 399 N.E.2d 1227 (1980), paragraph two of the syllabus. Express provisions to the contrary can include a clause disclaiming all implied covenants or a clause defining the timeliness or nature of development. *Alford v. Collins-McGregor Operating Co.*, 152 Ohio St.3d 303, 2018-Ohio-8, 95 N.E.3d 382, ¶ 13. A no-term lease has an implied covenant to reasonably develop. *See Ionno*, 2 Ohio St.3d at 132-133. Where a lease has a primary term and delay rentals are being paid, the lessor cannot complain about the implied covenant to reasonably develop during the primary term (as this is considered an express provision to the contrary). *State ex rel. Claugus Family Farm, L.P. v. Seventh Dist. Ct. of*

*Appeals*, 145 Ohio St.3d 180, 2016-Ohio-178, 47 N.E.3d 836, ¶ 31-33 (where there was also a clause disclaiming implied covenants).

**{¶16}** If that lease thereafter enters its secondary term due to production from a well, an implied covenant to reasonably develop may be implicated. *See Alford*, 152 Ohio St.3d 303 at ¶ 3-5, 14, 17. For instance, where a lease provides a well should be completed within a certain time period (or the lease is null and void) and the lease is silent on additional drilling (or the protection of lines), "there is an implied covenant on the part of the lessee that he will drill and operate such number of oil wells on the lands as would be ordinarily required for the production of oil contained in such lands, and afford ordinary protection to the lines." *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 48 N.E. 502 (1897), paragraph one of the syllabus.

**{¶17}** In a breach of implied covenant case, the United States Supreme Court imposed a conditional forfeiture which required the lessee to conduct additional development within a certain time or suffer the requested partial forfeiture of undeveloped acreage. *Sauder v. Mid-Continent Petroleum Corp.*, 292 U.S. 272, 282, 54 S.Ct. 671, 78 L.Ed. 1255 (1934) (canceling the lease as to a 320-acre tract *unless* within a reasonable time an exploratory well is drilled and leaving the lease intact as to 40 acres corresponding to existing wells in order to "recognize and protect the equities of both parties"). In that case, the lessor wrote to the lessee asking for release of undeveloped acreage, and the lessee replied by opining the current wells satisfied his lease obligations.

**{¶18}** Appellant relies on a case where summary judgment was granted for the lessor due to breach of the implied covenant of reasonable development where four-fifths of the leasehold acreage was undeveloped after 30 years. *See Core v. Samurai Corp.*, 2015-Ohio-5437, 55 N.E.3d 449 (7th Dist.). In that case, the lessor sent notice with a demand stating action would be taken to proclaim the undrilled property forfeited if the lessee did not commit to drilling the remaining property, and the lessee responded by stating that they considered the land to be held by the existing production. *Id.* at ¶ 4. On the issue of breach, the court relied on *Sauder* and a Fifth District case. *Id.* at ¶ 31. We note both of the cited decisions were made after trials and both ended with conditional forfeiture orders. *See Sauder*, 292 U.S. at 282; *Lake v. Ohio Fuel Gas Co.*, 2 Ohio App.2d 227, 207 N.E.2d 659 (5th Dist.1965). In addition, Appellee suggests *Core* is less precedential after the Ohio Supreme Court's 2018 statements in *Alford* suggesting the

implied covenant of reasonable development is not merely about whether additional drilling was possible due to time and acreage.

**{¶19}** In *Alford*, the Court rejected a separate covenant of further exploration upon finding a lessee is sufficiently protected by the implied covenant of reasonable development. *Alford*, 152 Ohio St.3d 303 at ¶ 11, 17. The Court observed the implied covenant is to "work the land with ordinary diligence, not simply for their own advantage and profit, but also so that lessors may secure the actual consideration for the lease, i.e., the production of minerals and the payment of a royalty on the minerals mined." *Id.* at ¶ 20, quoting *Ionno*, 2 Ohio St.3d at 134. This "implied covenant of reasonable development is not entirely one-sided in favor of landowners" as "lessees face various risks in any oil and gas lease, including substantial upfront investments with an uncertain potential for returns." *Alford*, 152 Ohio St.3d 303 at ¶ 21 (the profit motive to both the lessor and the lessee is the very essence of an oil and gas lease).

**{¶20}** Therefore, "the covenant imposes on the lessee only the obligation to act as a reasonably prudent operator would as it develops the land under the lease." *Id.*, citing *Harris*, 57 Ohio St. at 127 ("ordinarily prudent man—neither the highest nor lowest, but about medium or average"). The question is whether a prudent operator would further develop the land upon considering the interest of both the lessee and lessor and all factors relevant to development including: the costs of exploration; the likelihood exploration will result in production at or above a particular level; the market conditions; the geological environment; and any adjoining activity. *Alford*, 152 Ohio St.3d 303 at ¶ 23 (refusing to recognize a separate implied covenant to explore further "as it would focus on just a small subset of factors relevant to the overall profitability of development to the lessor and the lessee"). In accordance, the covenant is not automatically breached by the passage of time and the existence of space for another well as the covenant is not one of full well coverage of the leased premises but one of reasonable development.

**{¶21}** Regarding the remedies for breach of the implied covenant to reasonably develop, the general rule is: "Where certain causes of forfeiture are specified in an oil and gas lease, others cannot be implied. Under such a lease, the remedy for a breach of an implied covenant, without more, is damages, and not forfeiture of the lease, in whole or in part." *Ionno*, 2 Ohio St.3d at 134-135, quoting *Beer*, 61 Ohio St.2d 119 at paragraph three of the syllabus (approving and following *Harris*, 57 Ohio St. 118 at paragraphs two

Case No. 18 MO 0024

and three of the syllabus). However, this does not mean forfeiture can never be imposed for breach of an implied covenant as there is an equitable exception to this general rule: "Where legal remedies are inadequate, forfeiture or cancellation of an oil and gas lease, in whole or in part, is an appropriate remedy for a lessee's violation of an implied covenant." *Ionno*, 2 Ohio St.3d at 135 (and the lessor has the burden of proving damages are inadequate), quoting *Beer*, 61 Ohio St.2d 119 at paragraph four of the syllabus (upholding partial forfeiture for breach of implied covenant of reasonable development even though lease expressly provided for forfeiture for a certain specified cause). The equitable remedy of partial forfeiture of undeveloped acreage can be imposed for breach of an implied covenant "when necessary to do justice to the parties, even though specific grounds for forfeiture are set forth in the lease" but the court should "resort to such an extreme measure" only where there is "a strong showing of a violation of a clear right * * *." *Id. See also Jacobs v. Dye Oil, LLC*, 7th Dist. Monroe No. 18 MO 0020, 2019-Ohio-4085, ¶ 87-89 (lessor did not show breach of implied covenant by merely pointing to undeveloped acreage or show forfeiture was warranted).

**{¶22}** The parties agree there was an implied covenant of reasonable development after the lease entered the secondary term. The parties dispute whether this covenant was breached and whether forfeiture was a proper remedy; but first, they dispute whether notice with a demand for additional drilling was required in order to assert a breach of the implied covenant justified lease forfeiture.

<u>Assignment of Error: Notice & Demand for Additional Drilling</u>

**{¶23}** Appellant's sole assignment of error contends:

"THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING WADE'S SUMMARY JUDGMENT MOTION AS TO WHETHER WADE BREACHED THE LEASE'S IMPLIED COVENANT TO REASONABLY DEVELOP."

**{¶24}** Within this assignment of error, Appellant argues the court erred in ruling notice was required in order to provide a reasonable time for the lessee to cure any alleged breach of the implied covenant to reasonably develop and then the court erred in failing to recognize the right to relief in equity through forfeiture upon the facts allegedly showing breach of the implied covenant to reasonably develop. Appellee counters these arguments, stating summary judgment was proper because: notice was required; Appellant failed to show the implied covenant was breached by producing evidence that

<u>Case No. 18 MO 0024</u>

a reasonable operator under similar circumstances would have conducted additional drilling; and there was no evidence supporting forfeiture as a remedy. We need not address the latter two arguments as we find Appellant was not entitled to bring a lease forfeiture action for breach of the implied covenant to reasonably develop as he did not provide notice to Appellee demanding additional drilling (which would have provided Appellee a reasonable time after receiving notice to commence further drilling operations).

**{¶25}** Initially, Appellant points out that the case cited by the trial court, on the issue of notice as a condition precedent, was an old trial court case out of the Wayne County Common Pleas Court. *See Landers v. Ohio Oil Co.*, 24 Ohio N.P. (N.S.) 65 (1921). On this point, we note the *Landers* court cited an Ohio Supreme Court case, which supported its holding. *Id.* at 74, citing (with typographical errors in the name and volume) *Venedocia Oil & Gas Co. v. Robinson*, 71 Ohio St. 302, 73 N.E. 222 (1905). The Supreme Court held that the action for breach of the implied covenant of reasonable development (in a no-term lease with delay rentals if no well was drilled within 90 days) required rejection of the annual rental and a subsequent default after the demand notice. *Venedocia*, 71 Ohio St. at 316.

**{¶26}** Appellant contends the situation in *Landers* (and thus in *Venedocia*) is distinguishable from the case at bar as the required notice there involved a lessor's decision that he will no longer accept rental payments as a substitute for drilling. *See Landers*, 24 Ohio N.P. (N.S.) at 72-73 (where a reasonable time period was implied as the lease had no primary term). In those no-terms leases, the acceptance of the non-refundable rental was viewed as a waiver of the implied covenant of development, which required notice in order to discontinue the waiver. *See Venedocia*, 71 Ohio St. at 316.

**{¶27}** Appellee believes the notice principle also applies in cases where a well is already producing and rentals are not being paid. Appellee cites an Ohio appellate case holding: after a lessee entered upon the premises and expended money to develop a producing well, he "has a right to know if the lessor is going to insist upon greater developments of the property than has already been going on" and has the opportunity to more fully develop the property after the notice. *Ohio Oil Co. v. Hurlbut*, 7 Ohio C.D. 321, 324, 14 Ohio C.C. 144 (1897) (lessee is entitled to notice of intent to forfeit if reasonable development does not proceed, which is different than mere notice of a

forfeiture). The Ohio Supreme Court affirmed this decision without opinion. *Hurlbut v. Ohio Oil Co.,* 60 Ohio St. 613, 54 N.E. 1103 (1899).

**{¶28}** Appellee also relies on out-of-state cases for the principle that notice is required, with a reasonable time to thereafter develop, before filing a breach of implied contract action seeking forfeiture. *See, e.g., Sapp v. Massey*, 358 S.W.2d 490, 492-93 (Ky.1962) (condition precedent to suit to have lease forfeited for breach of the implied covenant to develop is that the "lessor must have put the lessee in default by making definite and unequivocal demand of him that he do so within a reasonable time, or by giving that character of notice that compliance with the implied covenant is required"). Appellee attaches a section from a treatise listing the various states with cases holding that notice of breach (with a demand for performance within a reasonable time) is a prerequisite to a lessor's action to forfeit the lease. 4 Williams & Myers, *Oil and Gas Law*, Section 682 (2011). This section also observes that the reason notice and demand must precede a suit for forfeiture for breach of a covenant is because "equity dislikes forfeiture and since one seeking equity must do equity, notice, demand, and an opportunity to cure the breach are required." *Id.*

**{¶29}** The Fourth District recognized the rule regarding notice with a demand by observing: the lessor ordinarily need not give the lessee notice and an opportunity to cure where the lease expired by its own terms; however, "the same general rule does not apply to actions for breach of an implied covenant." *Rudolph v. Viking Internatl. Resources Co.*, 2017-Ohio-7369, 84 N.E.3d 1066, ¶ 40 (4th Dist.).[3] Notably, in its oft-cited *Harris* case, the Supreme Court framed the question as whether the breach of the implied covenant of reasonable development resulted in forfeiture of the lease in whole or in part and "whether the plaintiff in error could, *by notice to the oil company*, secure to himself the right to drill oil wells on the undrilled part of said lands." (Emphasis added). *Harris v. Ohio Oil Co.,* 57 Ohio St. 118, 128, 48 N.E. 502 (1897) (where notice was provided asking the lessee to drill additional wells within a reasonable time or consider the lease forfeited).

---

[3] In arguing a lessor must give notice, Appellee also cites a Seventh District case finding the lessee gave the required notice of forfeiture by ordering the lessee from the land, but that case hinged on lease termination for failure to produce in paying quantities, not breach of implied covenant. *McConnell v. Hines*, 7th Dist. Monroe No. 605 (Dec. 29, 1987).

**{¶30}** Appellant argues the circumstances here excuse any required notice, claiming cases from the Ninth District show notice with a demand for additional drilling is not required under certain circumstances, including a long passage of time. Appellant relies on the following statement in the *Brannon* case: "Whether the actions taken by the [the lessors] amounted to notice and demand is of no consequence because in the face of circumstances such as these, no notice and demand is necessary before a forfeiture can be had." *Brannon v. King*, 9th Dist. Medina No. 1347 (Apr. 3, 1985), citing *Streck v. Reed*, 9th Dist. Medina No. 1221 (June 8, 1983).

**{¶31}** However, length of time was not the only circumstance relied on in *Brannon*; there were also multiple requests from the lessor to drill more wells on the property. The Ninth District expressly based its holding on the fact that "the record shows that [the lessee] and his predecessors made no attempt to further develop the land after 1968, and denied [the lessor's] repeated requests to do so from 1978 to 1982." *Id.* (where the lessee argued these requests did not constitute proper notice). Here, Appellant admits he made no request to drill additional wells. The *Brannon* case is not on point.

**{¶32}** In the *Streck* case cited by *Brannon*, a well was drilled on the first parcel in 1955, no well was drilled on the second parcel, and the complaint was filed in 1982. In discussing the second parcel, the Ninth District held: "in light of the long period of time involved in this case during which no development of the land was undertaken by the lessees, the trial court correctly found that notice and demand was not a necessary pre-condition to imposition of forfeiture." *Streck*, 9th Dist. No. 1221. The *Streck* lease specifically delineated the parcels by providing separate maximums for each parcel on the number of wells allowed. Here, the lease suggested the acreage was one parcel with no distinctions or allocations of lease obligations among identified tracts.

**{¶33}** Furthermore, in contrast to the *Streck* rationale, it has been observed: "That the lessor has permitted the lessee to hold the lease for a long period of time without demanding development is an added reason for requiring that the lessor communicate to the lessee his demand for further development, rather than a reason for dispensing with notice." 3 Summers, *Oil and Gas*, Section 22:3 (3d Ed.). Likewise, it has been stated by a federal appellate court: "The mere passage of a period of time deemed to be unreasonable should not waive the notice and demand requirement, because a lessor retains the right to test the reasonableness of delay by giving notice and demanding

Case No. 18 MO 0024

development." *Superior Oil Co. v. Devon Corp.*, 604 F.2d 1063, 1069-1070 (8th Cir.1979) (governed by Nebraska law, this case also outlined the requirement of notice with demand by citing law from Kansas, Kentucky, North Dakota, and Oklahoma).

**{¶34}** "The concept that notice and demand are waived if there has been no development for an unreasonable period of time does not appear to be supported by the law. The only circumstance under which notice and demand are waived is when the lessee indicates to the lessor, by words or conduct, that he will not commence further development of the lease despite demand made by the lessor." *Id.* at 1070. The case at bar does not involve the situation where it is alleged that a demand would have been futile because of the lessee's prior statements.[4]

**{¶35}** In summary, where a well is producing in paying quantities under the lease, in order for a lessor to assert that the failure to drill additional wells resulted in forfeiture for breach of the implied covenant of reasonable development, the lessor must have provided notice demanding further development to avoid forfeiture (which provides the lessee with a reasonable time to so develop). This notice is not excused merely because a long time has passed since the still-producing well was drilled. As notice with a demand for additional drilling was required but not provided, the other issues are moot; as such, we need not review the evidence on breach or the forfeiture remedy. For the foregoing reasons, Appellant's sole assignment of error is overruled, and the trial court's judgment is affirmed.

Donofrio, J., concurs.

Waite, P.J., concurs.

---

[4] Appellee testified at deposition that he tried to enter an agreement with a drilling company after horizontal drilling technology was introduced locally, but Appellant protested; he also believed Appellant was "hostile" to additional drilling on his land. Appellant seemingly contests the past failure to drill additional vertical, shallow wells.

Case No. 18 MO 0024

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**